Opinion
 

 POTTER, Acting P. J.
 

 Appellant Surety Insurance Company appeals from an order denying its motion to vacate the forfeiture of an appeal bond and to exonerate the bond. The order is appealable.
 
 (People
 
 v.
 
 Wilcox
 
 (1960) 53 Cal.2d 651, 655 [2 Cal.Rptr. 754, 349 P.2d 522].) The undertaking of the corporate surety bond was that Paul Douglas Hammond, who had been convicted of felony violations of the Health and Safety Code, would “surrender himself in execution of the judgment, upon its being affirmed.”
 

 On September 22, 1975, the remittitur from this court affirming the judgment and sentence imposed upon Hammond was received by the clerk of the superior court. The judgment appealed from ordered that “defendant be punished by imprisonment in the State Prison for the term prescribed by law” and further ordered “that the defendant be remanded into the custody of the Sheriff of the County of Los Angeles, to be by him delivered into the custody of the Director of Corrections at the California State Prison at Chino.” Since the judgment was in all respects affirmed,
 
 *232
 
 the remittitur did not direct the conduct of any further proceedings in the superior court.
 

 On September 23, 1975, appellant’s bail agent was notified by letter
 
 [1]
 
 from the county clerk as follows:
 

 “The Remittitur in the above-entitled action has been received in the Office of the County Clerk, Criminal Division, Room M-6 Criminal Courts Building, Los Angeles, California. You are advised that the file is being sent to the trial department; to wit, Department 119 for further proceedings.
 

 “The above-named defendant must be surrendered for execution of the order or further proceedings, as the case may be, unless otherwise ordered by the Court.”
 

 On September 27, 1975, Hammond filed a “Notice Of Intent To Appeal,” stating that he “will file a proper and timely appeal from the California judgments in the above numbered cases for review and hearing in the Federal Courts.”
 
 [2]
 
 On September 30, 1975, the superior court declared the bail forfeited and issued a bench warrant. On October 21, 1975, as required by Penal Code section 1305, subdivision (a), the clerk mailed notice of the order declaring the bail forfeited to appellant and to its agent. This notice stated in pertinent part that the bond had “been ordered forfeited by the court” and that “[y]our contractual obligation to pay such bond will become absolute on the 181st day following the date of the mailing of notice of the forfeiture unless the Court shall sooner order the forfeiture set aside and the bond reinstated.”
 

 Thereafter, within the 180-day period specified in Penal Code section 1305, subdivision (a), appellant filed its notice of motion to vacate the forfeiture and exonerate the bond. The motion stated that it was “made on the ground that the failure of the defendant herein to appear was without the connivance or collusion of his bail and the Court had no jurisdiction to declare a forfeiture,” and was accompanied by a declaration of noncollusion and a further declaration in support of the motion stating as follows:
 

 
 *233
 
 “I am informed and believe that the Defendant Hammond took his appeal in Pro. Per. After the remittitur was filed, this Court never made an order for the Defendant to appear before it. The Court summarily and arbitrarily forfeited bail on September 30, 1975, without notice or order to the defendant or the surety of any specific date to appear.
 

 “That by it’s [sic] failure to do so this Court’s order of September 30, 1975 forfeiting bail was invalid, was without jurisdiction and hence of no effect.”
 

 At the oral argument of the motion, counsel for appellant argued (1) that the trial court had no jurisdiction to declare the bail forfeited without first calendaring further proceedings in that court and notifying the defendant to appear at a specific time, and (2) that due process required that such steps be taken. Counsel for appellant did not deny that the defendant had failed to surrender himself in execution of the judgment, saying in this respect: “I am not suggesting, Your Honor, that the defendant isn’t a forfeiture. Obviously, he never showed up afterward. There is no contention of that. What I am contending is that the court did not take the necessary steps to properly invoke its jurisdiction to make an effective order forfeiting the bail in that the court did not notify the defendant of a date.”
 

 Respondent took the position that the court had waited a “reasonable period of a week” for Hammond to be surrendered so that the declaration of forfeiture was proper and, in view of appellant’s failure to produce the defendant to the date of hearing, the motion should be denied.
 

 Contentions
 

 Appellant contends that: (1) the Penal Code provisions relating to bail on appeal fail to specify the procedure for surrender of the defendant in execution of judgment, (2) such failure denied appellant due process by depriving it of notice of what it was required to do to comply with the terms of its bond, and (3) in any event, the provisions of Penal Code section 1305 providing for “forfeiture” of the bond without prior notice and an opportunity to be heard violate due process. Respondent controverts all of these contentions.
 

 In its reply brief, appellant raises a contention which was raised neither in the trial court nor in its opening brief, claiming that it “must be
 
 *234
 
 inferred” that Hammond’s failure to surrender in execution of the judgment was the result of his mistaken impression that his appeal bond permitted him to remain at liberty while he sought review by the federal courts. Appellant argues that his nonappearance thus was “excusable” within the meaning of Penal Code section 1305, subdivision (a).
 

 Discussion
 

 There was no denial of due process. The Penal Code provisions relating to exoneration of bail specify what is required of the surety to exonerate its bond, without unnecessary proceedings being calendared in the trial court. Consequently, when advised that the judgment of conviction and sentence had been affirmed, appellant’s obligation under its bond was clear. The declaration of forfeiture of the bond did not deprive the surety of its property; it was merely the initial step in proceedings to render judgment upon the bond. Before such judgment can be rendered, the surety is given ample notice and opportunity to be heard.
 

 The order of the trial court is not subject to attack on the basis of appellant’s belated claim that Hammond’s nonappearance was excusable.
 

 The Obligation of the Surety Upon Affirmance of the Judgment Is Clearly Specified in the Statute
 

 Appellant argues that in the case of an affirmance on appeal, “There is no statutory requirement in such a case for the procedure to return such a defendant to Court for further proceedings.” (Emphasis in original.) Obviously this is so because there is no occasion to return the defendant to court for further proceedings. The affirmance of the judgment is self-executing. Defendant has already been remanded into the custody of officials charged with carrying out the sentence. As soon as the affirmance is final, he is obliged to surrender himself to such officer to serve the sentence. As another division of this court said in
 
 People
 
 v.
 
 Surety Ins. Co.
 
 (1977) 76 Cal.App.3d 57, 62 [143 Cal.Rptr. 47]: “It is incumbent on the defendant to surrender himself in a reasonably prompt manner after the filing of the remittitur. No order of the court is necessary.”
 

 
 *235
 
 The obligation of the bail arising from a full affirmance is stated in Penal Code section 1300 providing for exoneration by the surrender of the defendant. That section reads, in pertinent part, as follows:
 

 “(a)
 
 At any time before the forfeiture of their undertaking,
 
 or deposit by a third person, the bail or the depositor may surrender the defendant in their exoneration, or he may surrender himself,
 
 to the officer to whose custody he was committed at the time of giving bail,
 
 in the following manner:
 

 “(1) A certified copy of the undertaking of the bail, or a certified copy of the certificate of deposit where a deposit is made, must be delivered to the officer who must detain the defendant in his custody thereon as upon a commitment, and by a certificate in writing acknowledge the surrender.
 

 “(2) The bail or depositor, upon surrendering the defendant, shall make reasonable effort to give notice to the defendant’s last attorney of record, if any, of such surrender.” (Italics added.)
 

 The surety on an appeal bond is thus adequately advised as to the procedure for performing the condition of his bond and exonerating it. He either arranges with the defendant to surrender himself to the “officer to whose custody he was committed at the time of giving bail,” or he arrests the defendant pursuant to Penal Code section 1301, for the purpose of surrendering him. No specific time limit is placed upon such surrender except that it be done before a declaration of forfeiture. Consequently, a surety notified of the affirmance of the judgment of conviction and sentence is advised that the defendant is due to surrender forthwith and that if the surety wishes to avoid the necessity of procedures to vacate or discharge a declaration of forfeiture, the defendant must be surrendered in advance of the time deemed reasonable by the trial court department to which the matter has been assigned for further proceedings relating to the bail.
 
 People
 
 v.
 
 Surety Ins. Co., supra, 16
 
 Cal.App.3d at page 63, suggests that Penal Code section 1300 be construed as entitling the surety “to reasonable notice of the filing of the remittitur and a reasonable time within which to surrender the defendant before suffering a forfeiture of the bond, . . . thus saving it from constitutional attack.” Assuming this reasonable time requirement is applicable to the mere declaration of forfeiture,
 
 [3]
 
 the action of the trial
 
 *236
 
 court in this case of declaring the forfeiture after elapse of a week’s time was not unreasonable.
 

 Appellant Was Not Deprived of Its Property Without Due Process of Law
 

 Appellant’s due process argument commences with the premise that the court’s September 30, 1975, declaration of forfeiture of the bond deprived it of its property. An examination of the full text of the Penal Code sections governing the procedure for forfeiture of bail demonstrates that this premise is fallacious. Though commonly referred to as forfeiture of the bail, the action taken by the court pursuant to Penal Code section 1305 does not determine any rights nor impose any disability whatever. As specified in that section, if the defendant neglects to surrender himself in execution of the judgment, the bail “must thereupon be declared forfeited.” Upon such declaration, notice must be sent to the surety or depositor that such action has been taken. Failure to do so within 30 days results in “the surety or depositor [being] released from all obligation under the bond." Thus, clearly the declaration of forfeiture is not a forfeiture in fact. Penal Code section 1305 further provides that “. . . the court shall direct the forfeiture of the undertaking or the deposit to be discharged upon such terms as may be just, . . .” if within 180 days after mailing of the notice of forfeiture (1) “. . . the defendant and his bail appear, and satisfactorily excuse the defendant’s neglect
 
 or
 
 show to the satisfaction of the court that the absence of the defendant was not with the connivance of the bail..(italics added); (2) “... the bail should surrender the defendant to the court or to custody...”; or (3) “. . . it is made to appear to the satisfaction of the court that the defendant is dead or is otherwise permanently unable to appear in court due to illness, insanity, or detention by civil or military authorities, and that the absence of the defendant was not with the connivance of the bail . . . .” The provision for notice and hearing requires the party seeking to discharge the forfeiture to give the district attorney or other prosecuting attorney notice and an opportunity to be heard.
 

 Penal Code section 1306 authorizes the court to enter a judgment against the bondsman “. . . in the amount for which the bondsman has bound himself,” only after the 180-day period specified in Penal Code section 1305 has passed and the forfeiture has not been set aside. It is thus apparent that the declaration of forfeiture mandated by Penal Code section 1305 is not a forfeiture at all but merely the initial step (in the
 
 *237
 
 nature of an order to show cause) in proceedings to forfeit the bond and render judgment against the surety.
 

 As our Supreme Court said in
 
 Mendoza
 
 v.
 
 Small Claims Court
 
 (1958) 49 Cal.2d 668, 672 [321 P.2d 9], “. . . due process requires that no person shall be deprived of
 
 a substantial right
 
 without notice and hearing. . . .” (Italics added.) Since the decision of the United States Supreme Court in
 
 Sniadach
 
 v.
 
 Family Finance Corp.
 
 (1969) 395 U.S. 337 [23 L.Ed.2d 349, 89 S.Ct. 1820], invalidating prejudgment attachment without prior notice and hearing, various procedures pursuant to which (1) a party’s property is seized, (2) his receipt of essential support is terminated, (3) vital privileges are suspended, or (4) a judgment is entered against him, without prior notice and an opportunity to be heard, have been invalidated on this ground.
 

 Examples of the first category, in addition to
 
 Sniadach,
 
 include the decision of the United States Supreme Court in
 
 Fuentes
 
 v.
 
 Shevin
 
 (1972) 407 U.S. 67 [32 L.Ed.2d 556, 92 S.Ct. 1983] (invalidating state claim and delivery procedures pursuant to which possession of property was seized by the sheriff without prior notice and hearing), and the decisions of our Supreme Court in
 
 Blair
 
 v.
 
 Pitchess
 
 (1971) 5 Cal.3d 258 [96 Cal.Rptr. 42, 486 P.2d 1242, 45 A.L.R.3d 1206] (invalidating the California claim and delivery procedure),
 
 Randone
 
 v.
 
 Appellate Department
 
 (1971) 5 Cal.3d 536 [96 Cal.Rptr. 709, 488 P.2d 13] (invalidating prejudgment attachment without prior notice and hearing), and
 
 Kash Enterprises, Inc.
 
 v.
 
 City of Los Angeles
 
 (1977) 19 Cal.3d 294 [138 Cal.Rptr. 53, 562 P.2d 1302] (invalidating the provisions of the Los Angeles Municipal Code authorizing seizure of news racks maintained in violation of the code). In each of these cases, the court specifically pointed out the substantiality of the deprivation of the plaintiff’s possessory right occasioned by even a temporary seizure.
 

 Examples of the second category are the decision of the United States Supreme Court in
 
 Goldberg
 
 v.
 
 Kelly
 
 (1970) 397 U.S. 254 [25 L.Ed.2d 287, 90 S.Ct. 1011], and the decisions of our Supreme Court in
 
 Shelly
 
 v.
 
 State Personnel Bd.
 
 (1975) 15 Cal.3d 194 [124 Cal.Rptr. 14, 539 P.2d 774], and
 
 Barber
 
 v.
 
 State Personnel Bd.
 
 (1976) 18 Cal.3d 395 [134 Cal.Rptr. 206, 556 P.2d 306], In these cases, the court emphasized the substantiality of the deprivation of property involved in the termination of the receipt of periodic stipends constituting “the means to obtain essential food, clothing, housing, and medical care. [Fn. omitted.]”
 
 (Goldberg, supra,
 
 397 U.S. at p. 264 [25 L.Ed.2d at p. 297].) In
 
 Shelly,
 
 the court referred to the
 
 *238
 
 employee’s critical need for continued receipt of his compensation “pending an evidentiary hearing” (15 Cal.3d at p. 213), noting “ ‘[h]is ability to secure other employment to tide himself over may be significantly hindered by the outstanding charges against him’ ”
 
 (ibid.)
 
 and his ineligibility for unemployment compensation. Consistent with this view,
 
 Barber
 
 held that the remedy for prehearing termination later upheld after hearing was an award of back pay from the date of termination to the date of hearing.
 

 Goss
 
 v.
 
 Lopez
 
 (1975) 419 U.S. 565 [42 L.Ed.2d 725, 95 S.Ct. 729], and
 
 Bell
 
 v.
 
 Burson
 
 (1971) 402 U.S. 535 [29 L.Ed.2d 90, 91 S.Ct. 1586], are in the third category. In
 
 Goss,
 
 the suspension of the privilege to attend public school was held to be the deprivation of a substantial right requiring notice and hearing.
 
 Bell
 
 applied the same requirement to suspension of driving privileges.
 

 In the fourth category is the recent decision of our Supreme Court in
 
 Isbell
 
 v.
 
 County of Sonoma
 
 (1978) 21 Cal.3d 61 [145 Cal.Rptr. 368, 577 P.2d 188], which invalidated judgments based upon a confession of judgment without any prejudgment hearing of the voluntary character of the waiver of due process rights. The substantiality of the deprivation in such cases was explained as follows
 
 (id.,
 
 at p. 72): “Once judgment has entered, the damage is done; the debtor is now subject to an obligation imposed in violation of his due process rights, and the creditor can immediately employ legal process to enforce that obligation. Thus as the court explained in
 
 Osmond
 
 v.
 
 Spence, supra,
 
 359 F.Supp. 124, 127, unless the validity of the waiver is determined ‘before the judgment is entered, an alleged debtor will be deprived of his due process rights on every occasion when an effective waiver has not occurred.’ [Fn. omitted.]”
 

 The distinction between the above described deprivations requiring prior notice and hearing and the claimed deprivation in the case at bench is apparent. The action taken against appellant without prior notice and hearing was a mere declaration of forfeiture. Appellant was not thereby deprived of any substantial right. Specifically, (1) none of its property was seized and thereby taken from its possession, (2) no source of revenue essential to its corporate life was cut off, (3) no privilege was suspended, and (4) it was not subjected to any obligation. None of these consequences flow from the declaration of forfeiture; only a judgment on the appeal bond could have any such effect. No such judgment could be entered until expiration of the 180-day period specified in Penal Code
 
 *239
 
 section 1305 during which appellant was on notice and had the right to a hearing to determine the propriety of the entry of any such judgment.
 

 No deprivation of due process is involved in such a procedure which obliges the opponent of a declared course of action to demand a hearing. In
 
 Goldberg, supra,
 
 397 U.S. at page 258 [25 L.Ed.2d at page 293], the procedure for termination of welfare payments at issue was described by the court as follows: “That subdivision, so far as here pertinent, provides that the local procedure must include the giving of notice to the recipient of the reasons for a proposed discontinuance or suspension at least seven days prior to its effective date,
 
 with notice also that upon request the recipient may have the proposal reviewed by a local welfare official
 
 holding a position superior to that of the supervisor who approved the proposed discontinuance or suspension, and, further, that the recipient may submit, for purposes of the review, a written statement to demonstrate why his grant should not be discontinued or suspended.” (Italics added.)
 

 The procedure was invalidated because it did not permit the recipient to make an oral presentation or to confront or cross-examine adverse witnesses. The procedure was, however, otherwise found adequate. The court said
 
 (id.,
 
 at p. 268 [25 L.Ed.2d at p. 299]): “We are not prepared to say that the seven-day notice currently provided by New York City is constitutionally insufficient
 
 per se,
 
 although there may be cases where fairness would require that a longer time be given.
 
 Nor do we see any constitutional deficiency in the content or form of the
 
 notice.” (Italics added.)
 

 More recently in
 
 Arnett
 
 v.
 
 Kennedy
 
 (1974) 416 U.S. 134 [40 L.Ed.2d 15, 94 S.Ct. 1633], the court dealt with similar “... procedures established for the purpose of determining whether there is ‘cause’ ... for the dismissal of a federal employee . . . .”
 
 (Id.,
 
 at pp. 147-148 [40 L.Ed.2d at p. 30].) As described in the opinion of Justice Powell, these procedures were
 
 (id.,
 
 at p. 170 [40 L.Ed.2d at p. 42]): “The affected employee is provided with 30 days’ advance written notice of the reasons for his proposed discharge and the materials on which the notice is based. He is accorded the right to respond to the charges both orally and in writing, including the submission of affidavits.
 
 Upon request, he is entitled to an opportunity to appear personally
 
 before the official having the authority to make of recommend the final decision.” (Italics added.)
 

 The plurality decision upheld these procedures. In
 
 Skelly
 
 v.
 
 State Personnel Bd., supra,
 
 15 Cal.3d 194, our own Supreme Court analyzed the various opinions and said
 
 (id.,
 
 at p. 215):
 

 
 *240
 
 “Applying the general principles we are able to distill from these various opinions, we are convinced that the provisions of the California Act concerning the taking of punitive action against a permanent civil service employee do not fulfill minimum constitutional demands.
 

 “It is cleár that due process does not require the state to provide the employee with a full trial-type evidentiary hearing prior to the initial taking of punitive action. However, at least six justices on the high court agree that due process does mandate that the employee be accorded certain procedural rights before the discipline becomes effective. As a minimum, these preremoval safeguards must include notice of the proposed action, the reasons therefor, a copy of the charges and materials upon which the action is based, and the right to respond, either orally or in writing, to the authority initially imposing discipline.” In
 
 Skelly,
 
 our Supreme Court characterized this rule as a “. . . modified position of the United States Supreme Court . . .”
 
 (id,
 
 at p. 210) contrasted to its “. . . rather rigid and mechanical interpretation of the due process clause”
 
 (id,
 
 at p. 208) reflected in earlier decisions, such as
 
 Sniadach, Fuentes,
 
 et al. The requirements of the “modified position” of the United States Supreme Court are more than met by the procedures specified in Penal Code sections 1305 and 1306.
 

 Before the actual forfeiture of the bond can occur, the surety is given notice of the “proposed action” (by declaration of forfeiture). The “right to respond” is provided by an opportunity within 180 days to move to vacate the declaration of forfeiture. Such motion results in a full evidentiary hearing before a judgment is rendered on the bond. There is no denial of due process in this procedure.
 

 Appellant’s Contention That Hammond’s Nonappearance Was Excusable Is Unavailable in This Court
 

 Appellant made no claim in the trial court that Hammond’s nonappearance was excusable. Consequently, it cannot attack the order denying the motion to vacate the forfeiture on this basis. “It is a general rule of appellate review that questions not raised in the trial court will not be considered on appeal.” (5 Cal.Jur.3d (1973) Appellate Review, § 480, p. 117.)
 

 In any event, there is no merit to this claim. Nothing in the record supports the assumption that Hammond was under a mistaken impres
 
 *241
 
 sion that he had a right to remain on bail. Appellant was unable to produce him at any time within the 180-day period after the bail was declared forfeited, and he was not apprehended during that period despite the fact that a bench warrant was outstanding. Consequently, appellant’s assertion “that he was not trying to evade the processes of the superior court” (emphasis in original) is specious.
 

 Moreover, Hammond’s good faith, if shown, would be irrelevant. Appellant concedes that even if federal court proceedings to review the judgment had been validly instituted, Hammond could only have continued on bail by successfully applying for such relief. Thus, even if appellant’s contention that the lack of “sufficient excuse” is jurisdictional under Penal Code section 1305 were correct, which it is not,
 
 [4]
 
 the order appealed from would be valid. There is no foundation whatever for appellant’s claim that Hammond’s good faith belief that he was not required to surrender was a “sufficient excuse” for his failure to surrender, precluding a declaration of forfeiture of the bond.
 

 The order is affirmed.
 

 Cobey, J., and Allport, J., concurred.
 

 A petition for a rehearing was denied July 19, 1978, and appellant’s petition for a hearing by the Supreme Court was denied August 24, 1978.
 

 [1]
 

 According to the reporter’s transcript of the argument, there also was “a note in the file that the clerk called Flo Meyerson, bail bondsman, to locate defendant on 9/23 at 1:10 [and] again [on] 9/25 at 11:45 a.m.”
 

 [2]
 

 It does not appear from the record that any federal court proceedings appropriate to review the judgment actually were initiated.
 

 [3]
 

 As shown in the next section of this opinion, the mere declaration of forfeiture is not the same as the surety “suffering a forfeiture of the bond.”
 

 [4]
 

 Penal Code section 1305 makes it clear that a showing sufficient to “satisfactorily excuse the defendant’s neglect” is merely a basis for vacating the declared forfeiture when the defendant and the bail appear within 180 days and make a motion on that basis.