**In the Matter of the Contested Case of EMMANUEL NURSING HOME.**

**No. C4–87–641.**

Court of Appeals of Minnesota.

Aug. 18, 1987.

Review Denied Oct. 13, 1987.

**512**

Samuel D. Orbovich, Robin P. Lackner, Broeker, Geer, Fletcher & Lafond, Limited, Minneapolis, for appellant.

* Acting as judge of the Court of Appeals by ap-

Hubert H. Humphrey, III, Atty. Gen., Gail M. Olson, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Heard, considered, and decided by CRIPPEN, P.J., LESLIE and LOMMEN,* JJ.

## OPINION

LESLIE, Judge.

This is an appeal of a final order issued by the commissioner of respondent Minnesota Department of Human Services. Relator Emmanuel Nursing Home disputed a 1980 determination by respondent Department that Emmanuel had been overpaid Medical Assistance funds in fiscal year 1979. A contested case proceeding was initiated in August of 1986. Simultaneously with the issuance of the notice and order for hearing, the Department filed a motion to dismiss because Emmanuel had failed to file a timely appeal. Emmanuel opposed the motion. Both parties submitted memoranda and supporting affidavits. On November 17, 1986 the Administrative Law Judge issued its report recommending the case be dismissed because Emmanuel had failed to file a timely appeal from the rate adjustment. The commissioner adopted this recommendation in an order and memorandum dated March 5, 1987. This appeal is before this court on a petition for a writ of certiorari. We affirm.

## FACTS

Relator Emmanuel Nursing Home is a nursing home that provides nursing services to persons who qualify for federal Medical Assistance under the state administered Medical Assistance program. Respondent Minnesota Department of Human Services is the state agency administering the federal Medical Assistance program in Minnesota. Nursing homes certified to participate in the program are reimbursed through the Department for care provided to Medical Assistance recipient residents. Emmanuel is certified to participate in the program.

pointment pursuant to Minn. Const. art. 6, § 2.

The rates paid to nursing homes for this care are governed by state and federal statutes, as well as rules promulgated by the Department. During the time relevant to this appeal, prior to July 1, 1983, nursing homes were reimbursed pursuant to provisions of 12 MCAR § 2.049 (1978), codified as Minn.Rules pts. 9510.0010–.0480 (1985) and known as Rule 49. Reimbursement under Rule 49 was made according to a per diem rate.

Generally, under such a method the reimbursement rate was determined by dividing the operator's budget for the current year, composed of historical costs for the past fiscal year plus projected increases or decreases in costs, by the total number of patient days for the past fiscal year. The rate yielded by this formula was applied to actual patient days in the current year.

As part of this ratesetting procedure, the Department conducted "desk audits" based on the facility's submitted annual cost report. In the audit the Department determined whether the projected decreases or increases in costs made by the provider, known as cost changes, had occurred as projected. If cost increases had not occurred as expected, the rate was adjusted to reflect this and the facility was required to pay back any previous overpayment. If the opposite occurred, no adjustment was made. Consequently, this method of calculating rate reimbursement favored the nursing home if occupancy levels declined during the current year, and favored the Department if occupancy levels rose.

The Department performed a desk audit on Emmanuel for the 1979 fiscal year. As a result of the audit the Department found that all projected cost increases, known cost changes, had not occurred as budgeted for in 1979. Using the per diem method of calculation, the Department found that Emmanuel owed a pay back. On September 2, 1980 the disputed Rule 49 rate adjustment notice providing for this pay back was issued to Emmanuel. While the September 2, 1980 rate notice did not inform Emmanuel of its right to appeal the adjustment, Emmanuel was provided with a name and number to call with questions.

After receiving the notice, an employee of Emmanuel called the Department to object to the lower rates established for Emmanuel in 1979. In response to the employee's confusion over the adjustment, the Department sent the working papers from which the adjustment was made. The Department was not advised of Emmanuel's desire to appeal at this time. Later, a second employee of Emmanuel contacted the Department, also objecting to the adjustment. In response, the Department agreed to delay enforcement of the rate adjustment until after the upcoming three year "field audit." Again, no mention was made of an appeal.

On May 11, 1981 the Department issued its field audit report to Emmanuel for the fiscal years 1978, 1979, and 1980. While the report did not specifically affirm the rate adjustment for fiscal year 1979, the rate specified for that year remained the same as in the September 2, 1980 notice. The report made no mention of Emmanuel's right to appeal, but again provided a name and number to call with questions.

A little over a year later, the Minnesota Supreme Court released *White Bear Lake Care Center, Inc. v. Minnesota Department of Public Welfare*, 319 N.W.2d 7 (Minn.1982). In *White Bear Lake* the supreme court invalidated the use of the per diem method of calculating Rule 49 reimbursement rates, because the method was a rule not properly promulgated under the Administrative Procedures Act. *Id.* The calculations method invalidated in *White Bear Lake* was the same method used in Emmanuel's case.

More than a year after release of *White Bear Lake*, in June of 1983, Emmanuel's auditor telephoned the Department objecting to the September 2, 1980 rate adjustment, and May 11, 1981 reiteration of that rate, because it was improperly calculated using the per diem method invalidated in 1982 *White Bear Lake* decision. The Department informed the auditor that Emmanuel could no longer appeal that rate adjustment, as the 30 day time limit then applicable to Rule 49 appeals had lapsed. The Department also confirmed that the

May 11, 1981 field audit report did not explicitly affirm the September 2, 1980 rate adjustment, as it should have. Following this telephone contact, the Department notified Emmanuel by letter that the May 11, 1981 field audit report specifically affirmed the original September 2, 1980 rate determination. The Department did not inform Emmanuel of its right to appeal in this letter. Had Emmanuel's auditor been so informed, he would have immediately appealed.

One year later, on June 27, 1984, Emmanuel's counsel contacted the Department by letter to inquire about the disputed rate determination. The Department responded in writing that the original pay back finding was correct. On August 5, 1986 Emmanuel's counsel again wrote to the Department, this time informing the Department of Emmanuel's intent to appeal.

Subsequently, on August 21, 1986, the commissioner of the Department issued a notice and order for hearing setting the matter on for a contested case proceeding, and simultaneously moved to dismiss the proceeding based on Emmanuel's failure to file a timely appeal. Emmanuel opposed the Department's motion to dismiss, arguing that the time limits for appeal were not jurisdictional, consequently, the appeal could not be dismissed for violation of those limits. In the alternative, Emmanuel argued their appeal had been timely perfected by oral protest to the Department. Emmanuel further argued the Department's failure to inform them of their appeal rights was a violation of due process and that the Department should be estopped from claiming a procedural deficiency on the part of Emmanuel because of this failure and other wrongful conduct.

On November 17, 1986 the administrative law judge issued its recommended order and memorandum advising the Department's motion to dismiss for lack of a timely appeal be granted. On March 5, 1987 the commissioner issued its final order in the matter, following the ALJ's recommendation to dismiss. The commissioner applied the standard for a motion for summary judgment and found that no gen-

uine issue of material fact existed on whether Emmanuel had filed a timely appeal. The commissioner found that Emmanuel had not, and that pursuant to legislative mandate this deficiency deprived the Department of jurisdiction. The commissioner also found Emmanuel had been afforded due process and that the Department was not estopped from asserting the time limits of the statute. On April 6, 1987 Emmanuel filed a petition for certiorari review pursuant to Minn.Stat. §§ 14.63–.69 (1986).

## ISSUES

1. Did relator fail to file an appeal within the required time limits?

2. Did relator receive due process of law by the afforded notice of appeal procedures?

3. Is respondent not estopped from asserting the time limits for appeal against relator?

## ANALYSIS

The scope of judicial review of an agency decision limits court action to situations in which the agency decision is:

(a) In violation of constitutional provisions; or

(b) In excess of the statutory authority or jurisdiction of the agency; or

(c) Made upon unlawful procedure; or

(d) Affected by other error of law; or

(e) Unsupported by substantial evidence in view of the entire record as submitted; or

(f) Arbitrary or capricious.

Minn.Stat. § 14.69 (1986).

■ In ruling on whether or not relator Emmanuel Nursing Home's appeal should be dismissed, the trial court found that "[b]ecause matters outside the pleadings have been presented and not excluded, the Department's motion must be treated as a motion for summary judgment." *See Elzie v. Commissioner of Public Safety*, 298 N.W.2d 29 (Minn.1980). In such a situation the commissioner must view the evidence in the light most favorable to the nonmoving party, and this court on appeal must

view the evidence most favorably to the one against whom the motion was granted. *Grondahl v. Bulluck,* 318 N.W.2d 240, 242 (Minn.1982).

### 1. *Timely Appeal*

At the time of the original September 2, 1980 Rule 49 rate adjustment, prior to July 1, 1983, the time limit for appeal of such an adjustment was as follows:

> Subp. 2. Time Limit. The provider, or the county, has 30 days to appeal from the date of the department's notification of the new per diem rate. Appeals will be heard by a hearing examiner of the Office of Administrative Hearings and will be according to rules of that office in addition to the provision of this part.

Minn.Rules pt. 9510.0140, subp. 2 (1985) (recodified from 12 MCAR § 2.049 (1978) (Rule 49)).

In *Leisure Hills of Grand Rapids v. Levine,* 366 N.W.2d 302, 304 (Minn.Ct.App. 1985), *pet. for rev. denied,* (Minn. July 11, 1985) this court held that the 30 day limit in Rule 49, Minn. Rules pt. 9510.0140, subp. 2 (1985), could not be used to bar an appeal, as such a jurisdictional limit was not provided for in the rule's enabling legislation. *Id.* at 304.

Emmanuel correctly claims that under *Leisure Hills* the Rule 49 appeal time limit of 30 days, applicable at the time the disputed rate adjustment was issued, can not operate to bar Emmanuel's appeal. Yet, a statute enacted after the September 2, 1980 rate adjustment provides time limits for Emmanuel's appeal. It is based upon this statute that the ALJ and commissioner found that Emmanuel's appeal was time barred.

On July 1, 1983 the legislature replaced the Rule 49 Medical Assistance reimbursement rate system with a new rate setting system codified in Minn.Stat. § 256B.50, known as Rule 50. This statute provided for an appeal deadline for nursing home rate appeals:

> To appeal, the nursing home shall notify the commissioner in writing of its intent to appeal within 30 days and submit a written appeal request within 60 days of receiving notice of the payment rate determination or decision.

Minn.Stat. § 256B.50, subd. 1 (1984).

In 1984 the legislature amended Minn.Stat. § 265B.50 to read in part as follows:

> A nursing home may appeal a decision arising from the application of standards or methods pursuant to sections 256B.41 and 256B.47 if the appeal, if successful, would result in a change to the nursing home's payment rate. *The appeal procedures also apply to appeals of payment rates calculated under 12 MCAR § 2.049 [Rule 49] filed with the commissioner on or after May 1, 1984. To appeal, the nursing home shall notify the commissioner in writing of its intent to appeal within 30 days and submit a written appeal request within 60 days of receiving notice of the payment rate determination or decision.* The appeal request shall specify each disputed item, the reason for the dispute, an estimate of the dollar amount involved for each disputed item, the computation that the nursing home believes is correct, the authority in statute or rule upon which the nursing home relies for each item, the name and address of the person or firm with whom contacts may be made regarding the appeal, and other information required by the commissioner.

> \*   \*   \*

1984 Minn. Laws ch. 641, § 21.

Consequently, if Emmanuel has filed an appeal with the commissioner prior to May 1, 1984, then the time limits of Minn.Stat. § 256B.50 do not apply. Additionally, in such a case the time limits of Minn. Rules pt. 9510.0140, subp. 2 also could not operate as a bar to Emmanuel's appeal, as *Leisure Hills* has established they are not jurisdictional. If Emmanuel has filed an appeal with the commissioner after May 1, 1984, then the time limits of Minn.Stat. § 256B.50 do apply and could operate to bar Emmanuel's appeal.

■ The ALJ and commissioner both rejected Emmanuel's claim that as a result of its employees oral objections to the rate adjustment it had perfected its appeal be-

fore May 1, 1984. Presuming oral appeal was allowed under the rule, both the ALJ and commissioner found the oral contact between Emmanuel's employee's and the Department did not constitute a timely appeal. We agree. Neither of the employees in the two disputed telephone discussions mentioned Emmanuel's desire to appear. Both merely objected to the rate decrease. The first employee appeared confused and requested an explanation for the rate adjustment, but never requested an appeal. The second employee also did not request an appeal. Neither caller followed up with any further complaints or appeal requests.

Emmanuel finally filed an appeal with the commissioner on August 5, 1986. Minn.Stat. § 256B.50 requires that notice of such an appeal be given within 30 days of the notice of the disputed rate determination and a written appeal be filed within 60 days of the same date. Emmanuel's notice and written appeal were filed with the commissioner in excess of five years beyond these statutory limits. An agency is deprived of jurisdiction to review its decision if a timely appeal is not filed as required by statute. *Leisure Hills*, 366 N.W.2d at 304. Therefore, the Department properly dismissed Emmanuel's appeal as untimely.

Emmanuel argues *Keefe v. Cargill, Inc.*, 393 N.W.2d 425 (Minn.Ct.App.1986) prohibits dismissal of Emmanuel's appeal on procedural grounds. In *Cargill* an employer's notice of contest, in which the employer disputed its alleged violations of the Minnesota Occupational Safety and Health Act, was dismissed as untimely pursuant to an agency rule. *Id.* at 426. This court found that the dismissal was improper, as the rule upon which it was predicated was promulgated outside the scope of the agency's legislatively granted authority. *Id.* Emmanuel's dismissal was predicated upon a statute, not a rule. Consequently, *Cargill* is clearly inapposite.

*2. Due Process*

For Emmanuel to receive Fourteenth Amendment due process protection there must exist a property interest sufficient to support a legitimate claim of entitlement. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Regardless of whether Emmanuel did have a protected property interest, we find Emmanuel received due process of law. Emmanuel argues it was deprived of due process because the September 2, 1980 and May 11, 1981 rate notices did not state the nursing home's right to appeal. Both the ALJ and commissioner rejected Emmanuel's argument and found that Rule 49 itself put Emmanuel on notice of its right to appeal.

In determining whether the rule itself provided sufficient notice, the governing due process standard is whether the notice was reasonable calculated under all the circumstances to apprise interested parties of the pendency of the action and an opportunity to present their objections. *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). Here both the ALJ and the commissioner concluded that notice provided by the Rule 49 appeal provision itself was sufficient, because nursing homes which participate in the Medical Assistance program are subject to a host of detailed rules which they are expected to know in order to be entitled to Medical Assistance reimbursement. We agree.

The cases cited by Emmanuel in support of its contention that the Department should be required by due process to inform them of their appeal rights are all distinguishable as not involving persons who participate in a highly regulated government program. *See Wilson v. Health & Hospital Corporation of Marion County*, 620 F.2d 1201 (7th Cir.1980) (property owner could not be expected to learn of his right to appeal through a city ordinance); *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1 (1978) (due process violation where public utility customer was given no notice of a way of challenging a bill prior to termination of services for nonpayment).

As the commissioner stated:

A nursing home receiving substantial government funds clearly stands on a

different footing than an ordinary citizen who purchases gas from a utility [*Memphis Light* ] or a property owner who faces possible condemnation for health violations [*Wilson* ]. The nursing home has an ongoing relationship with the government agency. The ALJ concluded that the nursing homes are more "sophisticated." But whether or not this nursing home is *actually* more sophisticated is irrelevant and does not raise a factual issue, as Emmanuel contends. Nursing homes are *expected* to be sophisticated, in the sense that they must be conversant with the rule that so profoundly affects the continuation of their businesses. As the ALJ stated, "[t]hey are subjected to a plethora of detailed and complex rules and can be expected to know the laws that apply to them." The Department is therefore not constitutionally required to include appeal provisions in its rate adjustment notices, although it may be good public policy to do so. (citation omitted).

Because, as a practical matter, the facility had to be at least somewhat familiar with Rule 49 in order to complete its cost reports, and Rule 49 clearly provided for appeals of payment rate determinations, the Rule constituted notice reasonably calculated, under all the circumstances, to apprise Emmanuel of its opportunity to appeal. Therefore, the nursing home's due process rights were not violated.

The oft quoted, " 'Men must turn square corners when they deal with the government,' " *Heckler v. Community Health Services,* 467 U.S. 51, 63, 104 S.Ct. 2218, 2225, 81 L.Ed.2d 42 (1984), applies here.

3. *Estoppel*

◾ Emmanuel claims the Department should be estopped from dismissing Emmanuel's belated appeal as untimely. To establish a claim of estoppel Emmanuel must prove that the Department " '[M]ade representations or inducements, upon which [relator] reasonably relied, and that [relator] will be harmed if the claim of estoppel is not allowed.' " *Brown v. Minnesota Dept. of Public Welfare,* 368

N.W.2d 906, 910 (Minn.1985) (quoting *Northern Petrochemical Co. v. United States Fire Insurance Co.,* 277 N.W.2d 408, 410 (Minn.1979)). Additionally, some element of fault or wrongful conduct must be shown. *Brown,* 369 N.W.2d at 910. The burden of proof in such a case is a heavy one and the court must weigh the public interest frustrated by the estoppel against the equities of the case. *Id.*

Emmanuel has not established the necessary elements for estoppel. In fact Emmanuel has not established even one of the necessary factors for such a claim. Most notable among these deficiencies is Emmanuel's failure to establish that the Department has committed some wrongful act.

Emmanuel's most tenable argument on this issue is that the Department's statement to Emmanuel's auditor in June 1983 that the time for Emmanuel's appeal had run and that appeal was then time barred. The *Leisure Hills* case established that this was in fact not the case, that the applicable time limits the Department referred to were not jurisdictional and could not act as a bar to Emmanuel's appeal. *Leisure Hills,* 366 N.W.2d at 304. Yet, *Leisure Hills* was not actually decided until more than a year after the Department's representation. At the time the Department made its representation it was stating what the law was at the time.

### DECISION

The commissioner properly dismissed relator's appeal as untimely.

Affirmed.