GOLDEN FIVE, INC., DOING BUSINESS AS GOLDEN YEARS NURSING HOME, ET AL., APPELLANTS, V. DEPARTMENT OF SOCIAL SERVICES, STATE OF NEBRASKA, ET AL., APPELLEES.

425 N.W.2d 865

Filed July 15, 1988.

Nos. 86-493, 86-494, 86-495, 86-496, 86-497, 86-498, 86-499, 86-502.

Richard P. Nelson and Susan L. Bowman, of Peterson Nelson Johanns Morris & Holdeman, for appellants.

Robert M. Spire, Attorney General, and Royce N. Harper for appellees.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

GRANT, J.

This is an appeal from orders of the district court for Lancaster County in eight cases which had been consolidated for hearing. The order in each case affirmed the decision of the Director of Social Services, Gina C. Dunning, under the

standards of Neb. Rev. Stat. § 84-917 (Cum. Supp. 1984). Plaintiffs are: Golden Five, Inc., doing business as Golden Years Nursing Home, No. 86-493; Tabitha, Inc., doing business as Tabitha Home, No. 86-494; Village Manor, Inc., doing business as Village Manor Nursing Home, No. 86-495; The Ev. Lutheran Good Samaritan Society, doing business as Good Samaritan Center-Wymore, No. 86-496; Village of Coleridge, doing business as Parkview Haven Nursing Home, No. 86-497; Elms Health Care Center, Inc., doing business as Elms Health Care Center, No. 86-498; The Ev. Lutheran Good Samaritan Society, doing business as Good Samaritan Center-Superior, No. 86-499; and Martin Luther Home Society, Inc., doing business as Martin Luther Home, No. 86-502. Defendants in each case are the Department of Social Services, State of Nebraska (hereinafter Department), and Gina Dunning, director of the Department of Social Services (hereinafter director).

The appeals to this court were also consolidated for purposes of briefing and oral argument, since all of the cases involve the same issues.

Defendant Gina Dunning was sued in her official capacity as director of the Department of Social Services. Plaintiffs are operators of medical care facilities which have participated in a medicaid reimbursement program with the State of Nebraska. In general, the medicaid program is a joint venture between the federal government and participating states. In order to participate in the program, a state must submit a satisfactory state plan which meets the standard of the Boren Amendment, codified at 42 U.S.C. § 1396a(a)(13)(A) (Supp. III 1985).

In 1965, with the enactment of Neb. Rev. Stat. § 68-1018 (Reissue 1986), Nebraska became a participant in the medicaid program. Defendant Department of Social Services is the state agency responsible for administering the Nebraska medicaid program. Included in the medical services provided by this program are services provided to eligible recipients by medicaid-certified "intermediate care facilities" and "skilled nursing facilities." The Nebraska plan was implemented by regulations which are codified at Neb. Admin. Code tit. 471, ch. 12, § 12-011 (1982 & 1984), effective August 1, 1982, and

January 1, 1984.

As set out in § 1396a(a), a state plan for medical assistance must:

(13) provide—

(A) for payment . . . of the hospital, skilled nursing facility, and intermediate care facility services provided under the plan through the use of rates (determined in accordance with methods and standards developed by the State . . .) which the State finds, and makes assurances satisfactory to the Secretary [of Health and Human Services of the U.S. government], are reasonable and adequate to meet the costs which must be incurred by *efficiently and economically* operated facilities in order to provide care and services in conformity with applicable State and Federal laws, regulations, and quality and safety standards and to assure that individuals eligible for medical assistance have reasonable access (taking into account geographic location and reasonable travel time) to inpatient hospital services of adequate quality . . . .

(Emphasis supplied.)

In order to ensure that the facilities in Nebraska would be "efficiently and economically" operated, the Department issued regulations providing that facilities whose adjusted allowable costs were less than or equal to those of the 65th percentile of all those reporting would be fully reimbursed for care provided to eligible recipients. This was determined as follows. The Department received a report of costs from each facility and, following its regulations, adjusted the allowable costs per medicaid patient day, as calculated by the Department, subtracting any cost not allowed from the costs submitted by the facility. Thereafter, the adjusted allowable costs per medicaid patient day were compared to costs of similar facilities in Nebraska and then ranked from least expensive to most expensive. Facilities ranking in the 65th percentile or lower were fully reimbursed for all allowable costs. Those facilities ranking above the 65th percentile were reimbursed at the same rate as those at the 65th percentile. Thus, an efficient and economical facility was defined by the State as a facility which could maintain its costs within a certain

percentile. In practice, the Department fully reimbursed facilities up to the 82d percentile.

In 1982, the Nebraska Legislature enacted Neb. Rev. Stat. § 68-720 (Cum. Supp. 1982), to be effective July 1, 1982. Section 68-720 provided in part:

> For fiscal year 1982-83, no payments shall be made by the Department of Public Welfare to any vendor for services provided to public assistance recipients, if such payments would result in a payment in excess of the fee allowed on April 1, 1982, increased by three and seventy-five hundredths per cent.

After the enactment of § 68-720, the Department, in August of 1982, amended its plan for reimbursement to these facilities by effectuating the statutory provision. The new plan, effective July 1, 1982, provided that reimbursement to a facility for medicaid services for fiscal year 1982-83 would be limited to the reimbursement allowed to that facility on April 1, 1982, plus 3.75 percent. This cap was later extended by the legislative amendment of § 68-720 (Supp. 1983) to a second fiscal year, 1983-84.

On September 22, 1982, the federal Health Care Financing Administration's regional office approved the amended plan, to be effective August 1, 1982. The regional office apparently did not protest the 3.75-percent limitation. However, on February 15, 1984, the regional office disapproved the extension of the limitation for the fiscal year 1983-84.

In 1982, the Nebraska Health Care Association, of which six of the plaintiffs are members, filed an action in the U.S. District Court for the District of Nebraska, contending, among other things, that § 68-720 (Cum. Supp. 1982 & Supp. 1983) was unconstitutional under the supremacy clause of the U.S. Constitution. Plaintiffs contended that the 3.75-percent cap set forth in § 68-720 was in conflict with the requirements of § 1396a(a)(13)(A), and therefore was an unconstitutional limitation.

As previously stated, § 1396a(a)(13)(A) requires that a state plan must provide for payment of the hospital, skilled nursing facility, and intermediate care facility services provided through the use of rates which the state finds, and makes assurances

satisfactory to the Secretary of Health and Human Services, are "reasonable and adequate" to meet the costs which must be incurred by "efficiently and economically" operated facilities.

The U.S. District Court, by an order which became final on October 10, 1984, held that § 68-720 was unconstitutional and permanently enjoined defendants from implementing the 3.75-percent limitation on increased costs. The court determined that the limitation could prevent plaintiffs from being reasonably and adequately reimbursed for costs incurred.

The Department appealed this decision to the U.S. Court of Appeals for the Eighth Circuit. See *Nebraska Health Care Ass'n v. Dunning*, 778 F.2d 1291 (8th Cir. 1985). The court of appeals upheld, on a somewhat different basis, the judgment of the district court enjoining enforcement by the State of its plan as to fiscal year 1982-83, but held that as to fiscal year 1983-84, the case was not ripe for judicial determination.

The Department is responsible for monitoring and reconciling medicaid reimbursement payment to the facilities. As summarized in appellants' brief, the procedure provides: (1) Each provider submits a cost report at the end of its fiscal year (Neb. Admin. Code tit. 471, ch. 12, § 12-011.09 (1982)); (2) each cost report is reviewed by desk audit, and a prospective rate for the next calendar year is established (Neb. Admin. Code tit. 471, ch. 12, § 12-011.10 (1982)); (3) when a field audit is performed, all reported costs are subject to adjustment and, in the case of an allowable cost adjustment, a new prospective rate is calculated and the provider notified (Neb. Admin. Code tit. 471, ch. 12, § 12-011.11 (1982)); and (4) the provider is also notified of the settlement amount resulting from the rate, and demand is made for payment (§ 12-011.11).

The record shows that the auditing section of the Department sent out audit adjustment letters to the appellant facilities on the following dates: Martin Luther Home, June 22, 1984; Good Samaritan Center-Wymore, July 9, 1984; Elms Health Care Center, June 1, 1984; Good Samaritan Center-Superior, July 9, 1984; Parkview Haven Nursing Home, June 1, 1984; Village Manor Nursing Home, June 22, 1984; Tabitha Home, May 1, 1984; and Golden Years Nursing Home, May 1, 1984. These adjustment letters each submitted to the

various operators a "Summary of Adjustments." The summaries showed adjustments in such items of expenses as "Administration," "Dietary," "Plant Related," "Interest," and "Depreciation." By agreement of the parties, the amounts of these adjustments are agreed to be mathematically accurate and are not the subject of this appeal.

It was from the computation summaries and decisions contained in these audit adjustment letters that each of the appellants appealed to the director. The Nebraska Department of Social Services manual, at Neb. Admin. Code tit. 471, ch. 12, § 12-011.13 (1982), provided for an administrative appeal as follows:

> Final administrative decision or inaction in the allowable cost determination process is subject to administrative appeal. The provider may request an appeal in writing from the Director of the Department *within 90 days* of the decision or inaction. The request for an appeal must include identification of the specific adjustments or determinations being appealed and basis and/or explanation of each item.

(Emphasis supplied.)

After administrative appeal hearings were held, the director issued a "Finding and Order" to each of the appellants. The director found, in each case, that

> the instant appeal is the only appeal of record relating to the application of the 3.75% limitation to the rates of the appellant facility which appeal was, obviously, filed outside of the prescribed timely [administrative] appeal period of ninety (90) days from the effective date of the last application in a rate computation, specifically, January 1, 1984.

The director also found in her findings and orders that in the recalculation of the allowable medicaid reimbursement rates, the Department's audit section made rate adjustments, due to unallowable costs, to rates which already reflected the 3.75-percent limitation. Thus, the Department found that "there was no actual further application of said 3.75% limitation in the recalculation of rates."

With regard to retroactive relief for the appellants, the

director found that

> the use of the 3.75% limitation in the original calculation of the rates had become administratively final in its use as to this facility since no appeal was taken within the timely appeal period from its original imposition effective August 1, 1982, and its most recent applicable rate period which commenced with rates effective January 1, 1984, with said timely appeal period being ninety (90) days from the date of administrative action pursuant to 471 NAC 12-011.13 . . . .

(The language in the finding and order in the appeal of Golden Five, Inc., was slightly different, but substantively the same.) According to the director, the last date to timely appeal is the effective date of the last application in a rate computation, January 1, 1984, plus 90 days. The director affirmed the actions of the audit section and found that no further adjustments were required.

The appellants then appealed to the district court for Lancaster County pursuant to § 84-917. All eight cases were consolidated for hearing. The district court found that "the decision of the Director of Social Services of the State of Nebraska is proper under the standards of Neb. Rev. Stat. §84-917 (6) (1984 Cum. Supp.)," and affirmed.

On appeal to this court, appellants assert the following assignments of error: (1) The district court erred in finding that appellants should have timely appealed the application of the 3.75-percent limitation in the initial 1982, 1983, and 1984 rate computations under the Administrative Procedures Act, Neb. Rev. Stat. §§ 84-901 et seq. (Reissue 1981 & Cum. Supp. 1984); (2) the district court erred in determining that appellants did not file notice of appeal within 90 days of an appealable agency action; (3) the district court erred in determining that the auditors did not apply the 3.75-percent limitation during the 1984 cost determination process; (4) the district court erred in affirming the decision of the director when she applied, to the appeals of the cost determination process, a statute and regulations which had been declared unconstitutional by a court of competent jurisdiction; (5) the district court erred in affirming the decision of the director when she enforced a

statute and regulations after she had been enjoined from doing so by a court of competent jurisdiction; and (6) the district court erred in allowing the director to review the auditors' actions under the rules and regulations in effect during the time for which the cost reports were filed.

The applicable standard of our review in this case has been set out in *Haeffner v. State*, 220 Neb. 560, 566, 371 N.W.2d 658, 662 (1985), where we stated: "[T]he appropriate standard of review for the Supreme Court is found in § 84-918, which prescribes a review of an agency's decision de novo on the record without the limitations imposed on the district court under § 84-917(6)(e) and (f)."

We determine that the assigned errors have no merit. On our review we find, as did the director, that the original application of the 3.75-percent limitation set out in § 68-720 was to rate periods beginning August 1, 1982, and January 1, 1984; that those ratesettings were not appealed in the Nebraska administrative process; and that such rates became final for the purpose of any retroactive relief. We affirm the order of the district court.

Appellants first assign as error that the district court erred in finding that appellants should have timely appealed the application of the 3.75-percent limitation in the initial 1982, 1983, and 1984 rate computations, under the Administrative Procedures Act. Appellants argue that it would have been futile to file administrative appeals in 1982, 1983, and 1984 because the Department, as an administrative body, has no power to declare an act of the Legislature unconstitutional. There is no question that this is a judicial power reserved to the courts. *Metropolitan Utilities Dist. v. Merritt Beach Co.*, 179 Neb. 783, 140 N.W.2d 626 (1966).

While it is true that the Department has no power to declare a statute unconstitutional, this concept is not dispositive of this issue. Appellants sought more than to have § 68-720 declared unconstitutional. They also sought retroactive monetary relief with regard to the 3.75-percent limitation. Retroactive monetary relief was something the federal courts had no power to grant. If appellants wanted something more than an injunction to be applied in the future, they were required to

exercise their rights timely under state administrative procedures. The constitutionality of § 68-720 could have been raised on appeal from the actions of the Department. At the least, an administrative appeal must be filed in order to preserve any right to potential retroactive money relief. Appellants chose to contest the constitutionality of the Nebraska statute in federal court. This achieved the result of protection from any future application of the 3.75-percent limitation by the Department, but it did not preserve a remedy which can only be awarded by a state agency or court, insofar as retroactive relief is sought.

In *Edelman v. Jordan*, 415 U.S. 651, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974), an action for injunctive and declaratory relief was brought against Illinois officials who were administering federal-state aid programs. The trial court entered judgment against the state officials and ordered the officials to retroactively release and remit benefits withheld from the plaintiffs. The U.S. Supreme Court reversed, quoting with approval from *Ford Co. v. Dept. of Treasury*, 323 U.S. 459, 65 S. Ct. 347, 89 L. Ed. 389 (1945): " '[W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants.' " 415 U.S. at 663.

The Supreme Court, in *Edelman*, went on to say at 663, "Thus the rule has evolved that a suit [in the federal courts] by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment." Such an action must be brought in the state courts. In *Edelman*, the Supreme Court also stated that it approved the observation in *Rothstein v. Wyman*, 467 F.2d 226 (2d Cir. 1972), to the effect:

"It is one thing to tell the Commissioner of Social Services that he must comply with the federal standards for the future if the state is to have the benefit of federal funds in the programs he administers. It is quite another thing to order the Commissioner to use state funds to make reparation for the past. . . ."

*Edelman*, 415 U.S. at 665. See, also, *Green v. Mansour*, 474

U.S. 64, 106 S. Ct. 445, 88 L. Ed. 2d 405 (1985); *Quern v. Jordan*, 440 U.S. 332, 99 S. Ct. 1139, 59 L. Ed. 2d 358 (1979).

After appellants obtained the declaration of unconstitutionality in the federal court system, they then returned to the administrative agency for retroactive monetary relief. We hold that since appellants did not file an appeal under the Administrative Procedures Act within the required time, they are barred from recovering retroactive monetary relief.

Appellants next assign as error that the district court erred in determining that appellants did not file a notice of appeal within 90 days of an appealable agency action. Appellants' position is that since each of them filed notices of administrative appeal within 90 days of the audit letters of the Department received by appellants in May, June, and July of 1984, as set out above, those filings constituted an administrative appeal with respect to the 3.75-percent limitation. We agree with the finding of the director (approved by the district court) that the 3.75-percent limitation was originally applied effective August 1, 1982, pursuant to § 68-720, and was continued forward in effect for subsequent rate periods, the most recent rate period having commenced January 1, 1984. We also so find.

The director went on to find that "the use of the 3.75% limitation in the original calculation of the rates had become administratively final . . . since no appeal was taken within the timely appeal period from its original imposition . . . ." We agree with such findings, and so hold.

Our examination of the record shows that, effective August 1, 1982, and January 1, 1984, the regulations provided that the rate permitted could not exceed 3.75 percent of the April 1, 1982, rate.

Appellants' third assignment of error alleges that the district court erred in determining that the auditors did not apply the 3.75-percent limitation during the 1984 cost determination process. In support of this contention, appellants cite a portion of Neb. Admin. Code tit. 471, ch. 12, § 12-011.13 (1982), which provides that *"Final administrative decision* or inaction in the allowable cost determination process is subject to administrative ˙ appeal." (Emphasis supplied.) Using this

regulatory language, appellants argue that "[t]he action of the Department in calculating a new reimbursement rate by the use of the rate determination formula after adjustment of the cost components by an audit is a part of the cost determination process and is subject to appeal." Brief for appellants at 28. They argue that since these adjustments are a part of the cost determination process, the dates on which they are performed should constitute a continuing application of the 3.75-percent limitation, and that, therefore, should begin the 90-day interval in which an appeal can be taken. This is contrary to what the Department and the district court held, that the 90-day interval began when the 3.75-percent limitation was first applied in August of 1982 and January of 1984.

This contention by appellants is incorrect. The director found in her finding and order that "in the recalculation of the allowable Medicaid reimbursement rates, the Audit Section only made rate adjustments due to unallowable costs which adjustments were made to rates which already reflected the 3.75% limitation. Thus, there was no actual *further* application of said 3.75% limitation in the recalculation of rates." (Emphasis supplied.) We agree. The Department auditors, in field-auditing these facilities, took no action concerning whether a 3.75-percent limitation should be imposed. The auditors simply adjusted allowable costs and then determined correct rates that should have been paid. Any application of the 3.75-percent limitation was done previously, at the time of initial prospective ratesetting. The setting of a 3.75-percent limitation is not an ongoing administrative act. While it may take the passing of time for the decision to manifest itself, this does not alter the fact that the decision has been made. Nor does it alter the fact that the decision became administratively final and, thus, appealable.

We hold that application of the 3.75-percent limitation became a final administrative action for purposes of appeal under Neb. Admin. Code tit. 471, ch. 12, § 12-011.13 (1982), when it was initially applied on August 1, 1982, and January 1, 1984, rather than at the time when the audit division of the Department finished calculating reimbursement rates. Thus, for purposes of appeal to the Department, and subsequently to

the state district court, the appellants are found to have administratively appealed outside the 90-day appeal limit.

Since no appeal was timely taken within the state judicial system, the appellants seek reimbursement based on the federal injunction. No remedy of retroactive money damages is so available.

For their fourth assignment of error, appellants assert that the district court erred in affirming the decision of the director when she applied, to the appeals of the cost determination process, a statute and regulations which had been declared unconstitutional by a court of competent jurisdiction. The declaration of unconstitutionality came after the director had established the rates, and the director properly applied the statutes until their unconstitutionality was decided.

Referring this court to the landmark U.S. Supreme Court decision in *Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908), appellants point out that the federal court, consistent with the 11th amendment, may enjoin state officials to conform their future conduct to the requirements of federal law. Appellants argue that the action of the director in issuing the findings and orders was an act of "future conduct" which had been properly enjoined by the federal court. For the same reasons provided in our discussion of the second assignment of error, this argument is without merit. Inherent in this argument is the notion that the cost determination process constitutes a new application of the 3.75-percent limitation. We have held that it is not. The issue of the 3.75-percent limitation was not properly before the director.

The points raised in appellants' other specific assignments of error have been discussed above, and in view of our de novo review, will not be further discussed herein.

We affirm the order of the district court.

AFFIRMED.