**CENTRAL CARE CENTER, et al., Relators,**

v.

**Ann WYNIA, Commissioner of Department of Human Services, Respondent.**

No. C1-89-1234.

Court of Appeals of Minnesota.

Dec. 12, 1989.

 

Thomas J. Barrett, Louis P. Smith, Popham, Haik, Schnobrich & Kaufman, Ltd., Minneapolis, for relators.

Hubert H. Humphrey, III, Atty. Gen., Julie K. Harris, and Michael S. Sharpe, Sp. Asst. Attys. Gen., St. Paul, for respondent.

Heard, considered and decided by HUSPENI, P.J., and SHORT and KLAPHAKE, JJ.

## OPINION

HUSPENI, Judge.

Relators seek review of an order by the Department of Human Services dismissing their appeals from several Department letters as untimely. We conclude relators did not receive adequate notice that the Department's letters constituted appealable decisions and, accordingly, we reverse and remand for contested case proceedings on the merits of relators' appeals.

## FACTS

Relators are nine nursing homes certified to participate in the Medical Assistance ("MA") Program. The respondent Department of Human Services ("Department") administers the MA Program in Minnesota. The Department reimburses relators for care provided to their resident MA recipients.

In 1983 and 1984, relators were acquired by new owners. Thereafter, the Department mailed each relator a letter stating that as a result of the change in ownership, a depreciation recapture amount was due the Department. According to these letters, the total depreciation recapture amount relators owed the Department was $1,250,110.

Each of the nine letters cited Department rules authorizing the recapture of excess depreciation amounts. Each letter included the language "Net Depreciation Recapture Due to DHS," followed by a monetary amount. Each letter also indicated, however, that if the relator believed the Department's figures were incorrect, the Department should be notified within 20 days.

Relators did not respond to these nine letters, and approximately one and one-half years later, on July 15, 1987, the Department notified relators that payment of the depreciation recapture amounts should begin immediately or the Department would begin deducting those amounts from relators' monthly MA reimbursements.

On July 28, 1987, relators notified the Department that they intended to appeal from the Department's July 15, 1987 determination. The Commissioner set relators' appeals on for hearing by an Administrative Law Judge ("ALJ"); however, the Department filed a motion to dismiss on the grounds that relators' appeals were not timely filed. It was the Department's position that relators should have appealed from the nine prior depreciation recapture letters. Relators countered that they were not required to appeal from the nine letters, since those letters were not appealable decisions and did not provide sufficient notice of any appeal requirements.

On October 28, 1988, the ALJ issued an order recommending that the Commission-

er grant the Department's motion to dismiss. The Commissioner adopted the ALJ's recommendation, dismissed the appeals, and ordered relators to pay the depreciation recapture amounts calculated by the Department. Relators obtained a writ of certiorari, requesting this court to review the Commissioner's decision.

## ISSUE

Did relators receive adequate notice that the nine letters constituted appealable decisions?

## ANALYSIS

At the time the Department mailed the nine depreciation recapture letters to relators, Minn.Stat. § 256B.50 (Supp.1985) provided:

A nursing home may appeal a decision * * * if the appeal, if successful, would result in a change to the nursing homes' payment rate * * *. To appeal, the nursing home shall notify the commissioner in writing of its intent to appeal within 30 days and submit a written appeal request within 60 days of receiving notice of the payment rate determination or decision.

Relators argue they were not required to appeal within 60 days from receipt of the nine depreciation recapture letters, since those letters did not affect their "payment rates." Minn.Stat. § 256B.421, subd. 9 (1984) defines "payment rate" as "the rate determined under section 256B.431." Subdivision 3 of that section gives the Commissioner the authority to recapture excess depreciation upon sale of a nursing home. Pursuant to this authority, the Commissioner promulgated 12 MCAR § 2.05011G[T], providing for excess depreciation recapture under certain conditions.

Both Minn.Stat. § 256B.431, subd. 3 and 12 MCAR § 2.05011G[T] concern "property-related costs." At the time the relators were acquired, property-related costs were one factor to be considered in determining a nursing home's payment rate. 12 MCAR § 2.05013[T].

We are persuaded by the Commissioner's reasoning as set forth in the June 6, 1989 memorandum to the findings, conclusions and order *In the Matter of the Contested Case of Good Neighbor Properties d/b/a Hilltop Care Center v. Minnesota Department of Human Services:*

[W]hen the department calculates a depreciation recapture amount, it is essentially recalculating the facility's payment rates for the years affected by excluding the depreciation reimbursement paid during those years. * * *

We agree with the Commissioner that a change in relators' "payment rates" would occur by recapturing excess depreciation. However, we believe the Department's nine depreciation recapture letters failed to adequately notify relators of the appeal requirements of Minn.Stat. § 256B.50. In arriving at this conclusion, we are persuaded by several factors. First, although the nine letters indicated that a monetary amount was due the Department, each letter also stated that the nursing home should notify the Department of any incorrect figures. This uncertainty undermines the Department's argument that the letters constituted appealable "decisions."

Second, each of the letters allowed 20 days for relators to notify the Department of any incorrect figures. This contributes to the uncertainty of the letters, since it is unclear whether the 60 days to appeal should have been calculated from the date of each letter or 20 days later, after relators were allowed to submit additional information to the Department.

We recognize that a Department notice need not specify a nursing home's appeal rights. In *Matter of Emmanuel Nursing Home*, 411 N.W.2d 511 (Minn.Ct.App.1987), we found that a Department rule itself put the nursing home on notice of its right to appeal.

[T]he governing due process standard is whether the notice was reasonabl[y] calculated under all the circumstances to apprise interested parties of the pendency of the action and an opportunity to present their objection.

*Id.* at 516.

In view of the uncertainty of the nine letters, we conclude they were not "reason-

ably calculated under all the circumstances" to apprise relators that they constituted appealable decisions. We are especially persuaded when we compare the nine letters to other payment rate determinations issued by the Department, which are entitled "Notice of Final Payment Rates" and which include specific mention of appeal rights. In comparing the nine letters to these other payment rate determinations, relators could not be expected to realize the letters constituted determinations requiring immediate appeal. *Cf. Emmanuel,* 411 N.W.2d at 517 (nursing homes which participate in the medical assistance program are expected to be aware of the rules and laws applicable to them).

In view of our decision that relators did not receive adequate notice that the Department's letters constituted appealable decisions, we need not address the arguments that dismissal of relators' appeals as untimely constituted a "taking" of over $1.2 million without adequate notice and hearing and that the Department's nine depreciation recapture letters violated the notice requirements of the Minnesota Government Data Practices Act, Minn.Stat. § 13.04, subd. 2 (1984).

### DECISION

The Department's order dismissing relators' appeals is reversed and this case is remanded for contested case proceedings on the substantive issues raised by relators' appeals.

Reversed and remanded.