619 A.2d 655

CHILDREN'S HOSPITAL OF PHILADELPHIA, PETITIONER–AP-PELLANT, v. DIRECTOR, DIVISION OF MEDICAL ASSIS-TANCE AND HEALTH SERVICES, NEW JERSEY DEPART-MENT OF HUMAN SERVICES, RESPONDENT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued December 2, 1992—Decided January 27, 1993.

Before Judges HAVEY, STERN and BROCHIN.

*Bruce W. Clark* argued the cause for appellant (*Dechert, Price & Rhoads,* attorneys; *Mr. Clark* and *John B. Reiss,* on the brief).

*Mary A. Hurley,* Deputy Attorney General, argued the cause for respondent (*Robert J. Del Tufo,* Attorney General of New Jersey, attorney; *Mary C. Jacobson,* Deputy Attorney General, of counsel; *Ms. Hurley,* on the brief).

The opinion of the court was delivered by

BROCHIN, J.A.D.

Children's Hospital of Philadelphia is a Pennsylvania hospital. New Jersey pays it for providing medical services to New Jersey Medicaid patients. In accordance with *N.J.A.C.* 10:52-1.17(b), the rate at which it is compensated for providing those

services is the pertinent Diagnosis Related Group (DRG) rate established by the appropriate Pennsylvania administrative agency.

Children's Hospital was a party to federal court litigation in which Pennsylvania's system for establishing DRG rates for its hospitals was held to violate federal law because the system resulted in compensating hospitals at rates that were not "reasonable and adequate to meet costs incurred by efficiently and economically operated facilities," particularly those serving disproportionate numbers of low-income patients with special needs. *Temple University v. White*, 729 *F.Supp.* 1093 (E.D.Pa.1990) (holding that plan did not comply), 732 *F.Supp.* 1327 (ordering interim relief), *aff'd* 941 *F.*2d 201 (3rd Cir.1991), *cert. denied*, —— *U.S.* ——, 112 *S.Ct.* 873, 116 *L.Ed.*2d 778 (1992). As the result of that litigation, to which New Jersey was not a party, Pennsylvania retroactively increased Children's Hospital's DRG rates. Children's Hospital then applied to the New Jersey Division of Medical Assistance and Health Services to be paid the difference between the compensation that it had received for services which it had provided to New Jersey Medicaid patients during its 1989, 1990, and 1991 rate years, calculated at the DRG rates then prevailing, and the compensation to which it would be entitled on the basis of its retroactively increased rates. Relying on *N.J.A.C.* 10:52-1.17(e) [1], the Division declined to consider the application on its merits because Children's Hospital had filed its claim more than 20 days after the close of the rate years during which the services were rendered.

---

[1] In the New Jersey Code of Administrative Regulations, the regulation is designated as *N.J.A.C.* 10:52-1.17(c); however, it follows -1.17(d) and there is another section -1.17(c) in its proper sequence. The section which is pertinent to this case should have been designated -1.17(e) and we will refer to it by that designation. The designation under which it appears in the Code is obviously a typographical error.

Children's Hospital has appealed. We hold that the Division's regulations do not justify its ruling. We therefore reverse the decision appealed from and remand this matter to the Division for consideration on the merits. An explanation of our ruling requires a discussion of the framework of federal law within which our State's Medical Assistance Program operates.

Pursuant to the New Jersey Medical Assistance and Health Services Act, *N.J.S.A.* 30:4D–1 *et seq.*, New Jersey compensates approved hospitals for providing necessary services to indigent, medically eligible New Jersey residents. Under the federal Medicaid Act, 42 *U.S.C.A.* § 1396 *et seq.*, the Federal Government reimburses the State for part of the cost. By accepting this financial assistance, New Jersey obligates itself to comply with the terms of the Medicaid Act and the pertinent regulations promulgated by the Secretary of Health and Human Services. *Wilder v. Virginia Hospital Assn.*, 496 *U.S.* 498, 502, 110 *S.Ct.* 2510, 2513, 110 *L.Ed.*2d 455, 462 (1990).

A state participating in the Medicaid program must compensate hospitals for services provided to Medicaid patients at rates that are "reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities," that "take into account the situation of hospitals which serve a disproportionate number of low income patients with special needs," and that "assure that individuals eligible for medical assistance have reasonable access (taking into account geographic location and reasonable travel time) to inpatient hospital services of adequate quality...." 42 *U.S.C.A.* § 1396a(a)(13)(A); *Temple University v. White*, 941 *F.*2d 201, 207 (3rd Cir.1991) A participating state must also provide a review procedure "to ensure the proper and efficient payment of claims and management of the program...." 42 *U.S.C.A.* § 1396a(a)(37). Federal regulations implementing these statutory provisions require a participating state to "pay for services furnished in another State [to an eligible resident of the participating state] to the same extent that it would pay for services furnished within its boundaries," 42 *CFR* § 431.52(b), and to

provide hospitals dissatisfied with their compensation the opportunity to obtain review of "payment rates." 42 *C.F.R.* § 447.-253(c); *see West Virginia University Hospitals, Inc. v. Casey,* 885 *F.*2d 11, 30–2 (3rd Cir.1989), *aff'd* 499 *U.S.* ——, 111 *S.Ct.* 1138, 113 *L.Ed.*2d 68 (1991) (considering and affirming only the Circuit Court's limitation of the award of experts' fees).

*West Virginia University Hospitals, Inc. v. Casey, supra,* demonstrates that a state participating in the Medicaid program is responsible for assuring that its compensation to out-of-state hospitals is "reasonable and adequate" in accordance with Federal law and that out-of-state hospitals dissatisfied with their compensation must have an opportunity to obtain review. Like New Jersey, Pennsylvania used a DRG system to determine charges for hospital care. Its procedure for formulating rates for in-state hospitals "t[ook] into account the situation of hospitals which serve a disproportionate number of low income patients with special needs," 42 *U.S.C.A.* § 1396a(a)(13)(A), by assigning each hospital to one of seven rate groups; an in-state hospital with a disproportionate share of low income patients was assigned to a group whose members were paid at a higher rate. But every out-of-state hospital was compensated at the average compensation rate for all in-state hospitals; no consideration was given to whether the out-of state hospital cared for a disproportionate share of low income patients. The Court of Appeals held that this aspect of Pennsylvania's program was invalid because it resulted in compensation to out-of-state hospitals that was not "reasonable and adequate" within the meaning of Federal law.

The United States District Court, *West Virginia University Hospitals, Inc. v. Casey,* 701 *F.Supp.* 496 (M.D.Pa.1988), whose decision was affirmed by the Court of Appeals, ruled that the Pennsylvania Medicaid program was also invalid on two other grounds. It found that if Pennsylvania continued to pay inadequate compensation, West Virginia University Hospitals would be unwilling to treat Pennsylvania Medicaid patients. As a consequence, "their ready access to quality care will be im-

paired." *Id.* at 518. On appeal, the Court of Appeals recognized that federal law prohibited the State from compensating out-of-state hospitals in a way that would cause them to be unwilling to treat Pennsylvania Medicaid patients, but the Court held that further findings would be required to sustain the district court's conclusion that the Pennsylvania program was about to have that result on the admission policy of West Virginia University Hospitals. *West Virginia University Hospitals, supra,* 885 *F.*2d at 25. The district court also ruled that Pennsylvania's review system failed to comply with federal requirements because hospitals could challenge only the result of the State's rate-making, not the validity of its methodology. *West Virginia University Hospitals, supra,* 701 *F.Supp.* at 520–23. The Court of Appeals disagreed, holding that the Pennsylvania's review procedure satisfied the requirements of federal law because appeals were permitted on some issues, including the calculation of rates. *West Virginia University Hospitals, supra,* 885 *F.*2d at 30–32.

The Third Circuit's decision in *West Virginia University Hospitals, Inc. v. Casey, supra,* is not binding on us, but the opinion is persuasive. We consider that it is an authoritative statement of federal law and has two significant implications for the present case. First of all, although Children's Hospital of Philadelphia is an out-of-state hospital, New Jersey is legally obligated to compensate it at rates which are "reasonable and adequate" within the meaning of federal law for the services it rendered to eligible New Jersey Medicaid patients. Since New Jersey relied entirely on Pennsylvania rates, New Jersey's Medicaid compensation system is, as applied to Children's Hospital, also violative of federal law and invalid. Secondly, New Jersey's system must include provision for review that will enable out-of-state hospitals, including Children's Hospital, a meaningful opportunity to challenge the rates at which it was compensated. Under the facts of this case, the construction of *N.J.A.C.* 10:52–1.17(e)(2) that has been adopted by the Division

would violate federal law by failing to provide Children's Hospital with the required opportunity to obtain a review of its rates.

The pertinent portions of *N.J.A.C.* 10:52–1.17(e)(2) read as follows:

(c) The following procedures must be followed when an appeal is filed by an out-of-state hospital:

1. ....

2. *If the appeal concerns issues relating to the rate of reimbursement, the appeal must be filed within 20 days after the close of the rate year in the state in which the hospital is located.* The following limitations shall apply to matters involving hospital rates.

i. The hospital must demonstrate an appeal has been filed with [the Medicaid] agency in the state in which the hospital is located;

ii. If the hospital has not filed an appeal in their own state, then the interim payment made by the Division's fiscal agent will be considered as final. [Emphasis added.]

After the Federal Court invalidated Pennsylvania's hospital rate-making system on January 24, 1990, the process of establishing new rates took more than a year. On May 29, 1991, the Pennsylvania Medicaid agency was held in contempt for failing to establish new rates in compliance with the court's prior order. As the result of that ruling, the agency and the hospitals entered into a stipulation fixing new retroactive rates.[2] Children's Hospital asserts that the Pennsylvania agency notified it on July 9, 1991 of its revised Medicaid rates for the three prior years. Thus July 9, 1991 was the earliest date at which the hospital could effectively challenge New Jersey's reimbursement rates that were based on the invalid Pennsylvania rates. The hospital filed its challenge on July 25, 1991.

Relying on the twenty-day provision of *N.J.A.C.* 10:52–1.17(e)(2), the New Jersey Medical Division of Medical Assistance and Health Services contends that the hospital should have asserted its claim by July 20, 1991. This interpretation of 1.17(e)(2) allowed the hospital eleven days in which to file its

---

[2] A copy of the stipulation has not been supplied to us and the parties disagree whether the rates which it affected include those for the year ended June 30, 1989 or only for the rate years ended June 30, 1990 and 1991.

appeal of the 1991 rates. Even if we assume that eleven days was an adequate period within which to file a claim for the rate year ended June 30, 1991, it would obviously have been impossible for Children's Hospital to assert its claims for 1989 and 1990 within twenty days after the end of those rate years. To entirely preclude the hospital from obtaining a substantive review of its claim with respect to those years would be contrary to the federal requirement that a state participating in the federal Medicaid program afford all hospitals, including out-of-state hospitals, an opportunity for a meaningful review. 42 *U.S.C.A.* § 1396a(37); 42 *C.F.R.* § 447.253(c). Our obligation is to construe *N.J.A.C.* 10:52–1.17(e)(2) so as to avoid that result if possible. *Cf. Smith v. Director, Division of Taxation,* 108 *N.J.* 19, 25–26, 527 *A.*2d 843 (1987) (despite substantial deference due agency's construction of its own regulations, a court will invalidate a regulation if it is inconsistent with the statute it purports to interpret).

The Division argues that the review which Children's Hospital seeks would not have been barred if it had notified the Division when the litigation challenging Pennsylvania's rate-making process was initiated. We assume that such a requirement would have been a valid condition for review if it had been established by statute or regulation. *Cf. Matter of Emmanuel Nursing Home,* 411 *N.W.*2d 511, 516 (Minn.App.1987) (affirming Medicaid agency's refusal to adjust closed rate years where facility failed to file a timely appeal); *Golden Five, Inc. v. Nebraska Dept. of Social Services,* 229 *Neb.* 148, 425 *N.W.*2d 865, 870 (1988) (denying retroactive monetary relief where operators of health care facility had obtained a federal district court judgment but had not filed a timely administrative appeal). However, we find no such requirement. Certainly, none is stated with the clarity that out-of-state hospitals are entitled to expect in the light of the federal requirements that New Jersey afford them "reasonable and adequate" compensation and provide them with the opportunity to obtain a review of rates which fail to comply with that standard. In our view,

*N.J.A.C.* 10:52–1.17(e)(2) can and should be interpreted to comply with federal law.

*N.J.A.C.* 10:52–1.17(e)(6) states, "An out-of-state provider who requests a hearing [with respect to rates] would have the *same rights,* duties and obligations as an in-state provider." (Emphasis added.) In the light of that regulation, New Jersey's review procedure for rate appeals by out-of-state hospitals should be construed to accord those hospitals "the same rights" of review as are provided to in-state hospitals. *N.J.A.C.* 8:31b–3.52(c), the rule of limitations for in-state hospitals, reads:

> A hospital which believes that the proposed rates are inadequate to support operation of an efficient and needed institution may request a full rate review as defined in N.J.A.C. 8:31B–3.51. A hospital must submit a request for a full rate review, together with all information required in (e) below, *within 30 days of receipt of the proposed Schedule of Rates.* [Emphasis added.]

Since *N.J.A.C.* 10:52–1.17(e)(6) gives an out-of-state hospital the "same rights" with respect to a rate appeal as an in-state hospital, we interpret the clause, "within 20 days after the close of the rate year in the state in which the hospital is located," in *N.J.A.C.* 10:52–1.17(e)(2), as having substantially the same meaning, except for the difference in the number of days, as the requirement for the submission of "a request for a full rate review ... *within 30 days of receipt of the proposed Schedule of Rates*" in *N.J.A.C.* 8:31b–3.52(c) [3]. In other words, since New Jersey rates for an out-of-state hospital depend on those established by the foreign state, *N.J.A.C.* 10:52–1.17(e)(2) means that a proceeding challenging a rate in an out-of-state hospital's home state keeps open or reopens the relevant rate year for the purpose of a possible New Jersey appeal until the hospital is notified of the final rates fixed by its home state. This construction of the regulation preserves the federal-law right of an

---

[3] We express no opinion on whether according out-of-state hospitals fewer days than in-state hospitals within which to file rate appeals has any legal significance. That difference does not appear to be material to the present case.

out-of-state hospital to a meaningful New Jersey review of its rates and the adequacy of its compensation in this State.

By virtue of our interpretation of *N.J.A.C.* 10:52–1.17(e), the rate years at issue in Children's Hospital's pending claim did not close until it received notice of the retroactively revised final DRG rates established by the Pennsylvania Medicaid agency.[4] Therefore, that regulation does not bar the hospital's claim. That is the only issue we have decided. All other issues affecting the disposition of the hospital's claim for retroactive reimbursement remain open for consideration by the Division.

The decision appealed from is vacated and this matter is remanded to the Division of Medical Assistance and Health Services for further proceedings not inconsistent with this opinion.

---

[4] While federal regulations provide for a twelve-month limitation on Medicaid claims in most instances, "[t]he agency may make payments at any time in accordance with a court order...." 42 *CFR* § 447.45(d)(4)(iv). We were told during oral argument that claims paid pursuant to court order would be eligible for federal reimbursement to the same extent as if they had been timely paid.