[Civ. No. 50691. Second Dist., Div. Two. Dec. 19, 1977.]

THE PEOPLE, Plaintiff and Respondent, v.
SURETY INSURANCE COMPANY et al., Defendants and Appellants.

COUNSEL

Howard Meyerson and Jonathan Milberg for Defendants and Appellants.

John K. Van de Kamp, District Attorney, Arnold T. Guminski and Eugene D. Tavris, Deputy District Attorneys, for Plaintiff and Respondent.

OPINION

**COMPTON, J.**—Surety Insurance Company and Wilshire Insurance Company (Sureties) posted an aggregate $10,000 appeal bond on behalf of Oscar Onsurez (defendant) who had been convicted of a felony in the Superior Court of Los Angeles County. Subsequently the bond was ordered forfeited. Sureties made a timely motion to vacate the forfeiture

and exonerate the bond. The motion was denied. Sureties appeal from the order denying their motion to vacate the forfeiture.

The controlling statute is Penal Code section 1305, which reads in pertinent part: "*If, without sufficient excuse, the defendant neglects to appear . . . for any . . . occasion when his presence in court is lawfully required, or to surrender himself in execution of the judgment,* the court must direct the fact to be entered upon its minutes and *the undertaking of bail,* . . . must thereupon be declared forfeited, . . . the *clerk* of the court *shall, promptly . . . mail notice of* the forfeiture to the surety . . . . If the clerk fails to make such notice within 30 days . . . the surety . . . shall be released from all obligations under the bond. But *if at any time . . . within 180 days* after mailing such notice of forfeiture, the *defendant and his bail appear,* and *satisfactorily excuse the defendant's neglect* or show to the satisfaction of the court that the absence of the defendant was not with the connivance of the bail, [the court shall set aside the forfeiture]." (Italics added.)

The statute further contains a provision for relieving the surety where the defendant for reasons of illness, detention or death cannot appear and a provision for extending the time when it appears that sufficient excuse for defendant's nonappearance may exist.

Penal Code section 1273 in describing the nature and conditions of bail on appeal simply states that "If judgment of imprisonment has been given, that [defendant] will surrender himself . . . upon [the judgment] being affirmed . . . ."

As might be expected, the statutes do not contain any specific procedure for fixing the date or place of surrender following the disposition of an appeal, and the general practice that is followed in the trial courts is to *not set a specific date* in advance because of the difficulty in predicting the length of time which may be consumed in the appeal process.

In order to understand the controversy in the case before us it is necessary to set out in some detail the chronology of events as reflected by the record in this case and the record in another case which was simultaneously pending against defendant.

On September 3, 1974, defendant was before the superior court for sentencing in this case (No. A186326). Also on the calendar on that date

was a hearing on defendant's violation of probation in another case (No. A512054). For sake of clarity and convenience we will, in setting out the chronology, refer to the present case (No. A186326) as case #1, and the probation matter (No. A512054) as case #2.

In case #1, defendant was sentenced to state prison. Execution of the judgment was stayed pending appeal and defendant was admitted to bail in the sum of $10,000. In case #2, the trial judge expressed an intention to postpone the determination of the probation violation until completion of the appeal in case #1. *In case #2, defendant was released on his own recognizance and further proceedings were continued to February 21, 1975. No further appearance date was set for case #1.*

Subsequently defendant made several appearances in the trial court up to and including December 12, 1975. On that date he was ordered to appear again on February 27, 1976.

Because of the fact that the two cases were both pending in the same court the clerk's entries are confusing. For example, on September 11, 1975, defendant appeared in court and was continued for the appearance on December 12, 1975. A copy of the minute order *bearing the superior court number of case #2 is contained in the jacket of case #1 and no copy of that order appears in the jacket of case #2.*

It is obvious that all of defendant's appearances in the trial court after September 3, 1974 were in connection with further postponement of the probation violation in case #2 even though the clerk erroneously made various entries in both files.

Thus on December 12, 1975, when defendant was finally ordered to return to court on February 27, 1976 in connection with case #2, no date had been fixed for his surrender on case #1. The sureties had not guaranteed his appearance in case #2.

The bond posted by the sureties in case #1 simply recited that defendant would surrender himself "in execution of the judgment, upon its being affirmed or modified, or upon the appeal being dismissed, . . . ."

On February 24, 1976, this court filed its remittitur affirming the judgment of conviction. The clerk of the superior court sent a notice, by mail, to each of the two bail agents. The letter to Wilshire's agent was

dated February 25, and the letter to Surety's agent was dated February 26.

The two notices advised the agents of the receipt of the remittitur and indicated that defendant should be surrendered. No date was specified. It must be assumed that the earliest dates that the letters were received were February 26 and February 27. Even though defendant was to appear in court on February 27 in connection with case #2, the sureties could not have been expected to know that since they had not guaranteed that appearance.

Defendant failed to appear on February 27, 1975, and the trial court thereupon forfeited the bond on appeal. Timely notice of the forfeiture was given to the sureties. The sureties in due time moved to vacate the forfeiture on the grounds that they had no proper notice of the February 27 appearance and that they were informed that defendant was dead. Hearing on the motion was first set for October 1, 1976, but was not actually heard until January 5, 1977. The motion was denied and this appeal ensued.

The superior court file in case #1 reflects that defendant was arrested on a bench warrant sometime after the hearing on the motion to vacate the forfeiture and was committed to prison on May 24, 1977.

■ We agree with the sureties that the order of forfeiture was premature. Sureties were entitled to a reasonable time to produce defendant after receipt of notice that the remittitur had been filed. The February 27 date was not a reasonable date under the circumstances and the failure to appear on that date was not grounds for forfeiting the bond, since that was not the date on which the sureties had agreed to surrender him.

■ On the other hand we cannot agree with sureties that the entire statutory scheme is unconstitutional or that they were denied due process of law in the matter. Under the circumstances, as we will discuss *infra*, a reversal and remand of the matter now would be an idle act unless for some reason the sureties are entitled to have the bond exonerated. We do not think that they are so entitled.

The essential ingredients of procedural due process of law are notice and hearing. (*Endler* v. *Schutzbank*, 68 Cal.2d 162 [65 Cal.Rptr. 297, 436 P.2d 297]; *In re Harris*, 69 Cal.2d 486 [72 Cal.Rptr. 340, 446 P.2d 148].)

While sureties did not receive proper notice of the February 27 hearing they did receive two notices (1) the letter advising them of the need to surrender defendant, and (2) notice of the order of forfeiture.

Under the bail scheme established by Penal Code section 1305, the primary responsibility for making the necessary appearances is on the defendant. It is the defendant with whom the court is dealing. It is his appearance which the sureties guarantee and it is his nonappearance which triggers court action on the bond.

Penal Code section 1305 protects the surety by requiring the clerk to give prompt notice of the forfeiture and a failure to do so frees the surety of responsibility. Implicit in this scheme is the concept that the surety, upon learning of the default of defendant, shall have an opportunity to locate him and surrender him. The time afforded the surety to locate and surrender the defendant is basically six months—a reasonable period of time. Of course, if defendant's nonappearance is without excuse the surety must suffer the consequences. That is the nature of the contract. The surety is afforded ample opportunity to establish a valid excuse for the nonappearance. Thus the general scheme meets the test of due process at least insofar as the usual scheduled trial court appearances are concerned.

In the case of an appeal bond, while no specific date is set for the surrender, both defendant and the surety know that there will come a day when it will be necessary to again appear in court on the matter. The surety contracts for that. Failure to surrender in execution of judgment after affirmance on appeal is specified as the event which requires forfeiture of the bond.

The question then is at what point in time and under what circumstances can the trial court conclude that defendant has failed to surrender in execution of the judgment.

Presumptively a defendant who has appealed receives notice of the results of that appeal. That notice will normally come from his attorney, who is also aware of the time for the filing of the remittitur. It is incumbent on the defendant to surrender himself in a reasonably prompt manner after the filing of the remittitur. No order of the court is necessary.

It is not the duty of the trial court to seek out defendant and request his appearance after the filing of the remittitur, hence we think that it is incumbent on the surety to maintain contact with the defendant during the interim and if contact is lost to take steps to re-establish it. The surety, of course, has the right at any time it feels insecure to surrender the defendant and have the bond exonerated. (Pen. Code, § 1300.)

Recognizing, however, the practical fact that defendant's counsel may not always promptly advise the defendant or the surety of the disposition of an appeal, we believe that the surety is entitled to reasonable notice of the filing of the remittitur and a reasonable time within which to surrender the defendant before suffering a forfeiture of the bond. This provision may be read into the statute thus saving it from constitutional attack. (16 C.J.S., Constitutional Law, § 99, pp. 388-445; *People* v. *Medina,* 15 Cal.App.3d 845 [93 Cal.Rptr. 560].) What is a reasonable time will necessarily vary according to the circumstances in each case.

In the case at bar we have no doubt that if the defendant had been surrendered within a reasonable time even up to a week after the letters concerning the remittitur were received, the court would have exonerated the bail. Instead, sureties first appeared to argue the motion to vacate the forfeiture on October 1, 1975, some seven months after receiving those letters *without producing defendant.*

The arrest of defendant by the sheriff's fugitive detail on the bench warrant in May of 1977 is evidence that defendant was alive during the critical period. It is also evident that sureties were unable to produce him nor any legally cognizable excuse for not doing so prior to that time. Sureties were afforded a hearing in January of 1977, and at that time could only assert that they believed him to be dead. They now concede that their proof on that issue was inadequate.

The notice of the filing of the remittitur and the notice of the forfeiture (albeit premature) were both adequate to inform sureties of the need to produce the defendant. Sureties have not to this date advanced any argument that an additional notice, even one specifying an exact date for surrender, would have enhanced their ability to produce defendant or that because of the failure to receive such a notice they somehow lost the opportunity.

Hence, if we were to now remand the matter to the trial court and direct a rehearing of the motion to vacate the forfeiture, it does not appear that sureties could establish any grounds to exonerate the bond.

In summary it is clear to us that defendant absconded sometime prior to February 27, 1975. Sureties were put on notice of the affirmance of the judgment and in spite of being afforded a hearing and ample opportunity, were unable to produce the defendant over a period of thirteen months.

The order is affirmed.

Roth, P. J., and Beach, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied February 16, 1978.