[No. A045254. First Dist., Div. Two. May 3, 1990.]

STEVE MINOR, Plaintiff and Respondent, v.
THE MUNICIPAL COURT FOR THE SAN FRANCISCO
JUDICIAL DISTRICT OF THE CITY AND COUNTY OF SAN
FRANCISCO et al., Defendants and Appellants.

1544

## Counsel

Louise H. Renne, City Attorney, Kimberly A. Reiley and Geoffrey Spellberg, Deputy City Attorneys, for Defendants and Appellants.

Robert H. Blumenthal for Plaintiff and Respondent.

## Opinion

**SMITH, J.**—Florida resident Steve Minor posted $18,000 cash bail for a California criminal defendant who subsequently failed to appear, resulting in the San Francisco Municipal Court issuing notice of bail forfeiture and loss of the funds. Minor sued the municipal court and the City and County of San Francisco's controller (together the city) in the superior court,

seeking return of the funds. The superior court granted summary judgment in his favor, concluding that notice of the forfeiture was constitutionally deficient. The city appeals, urging lack of subject matter jurisdiction and that the notice was sufficient.

We will affirm.

## BACKGROUND

Minor posted bail in the municipal court on February 1, 1984, for Yohalmo Arbaiza, a defendant charged with various felony sex offenses in People v. Arbaiza (Mun. Ct. City & County of S.F., 1984, No. 672577). Arbaiza failed to appear (evidently for a scheduled Feb. 15 date), and the court issued a bench warrant.

On March 19, the court ordered bail forfeited and the clerk mailed Minor a notice reciting in relevant part, "Pursuant to Section 1305 of the Penal Code, you are hereby notified of an order of the Court this date forfeiting bail . . . ." That notification started the 180-day time running for Minor to seek relief from the forfeiture under Penal Code section 1305.[1]

---

[1] All further section references are to the Penal Code unless stated otherwise. In 1984, section 1305 read in pertinent part:

"(a) If, without sufficient excuse, the defendant neglects to appear . . . the court must direct the fact to be entered upon its minutes and the undertaking of bail, or the money deposited instead of bail, as the case may be, must thereupon be declared forfeited, and, if the amount of the forfeiture exceeds one hundred dollars ($100), the clerk of the court shall, promptly upon entering the fact of such failure to appear in the minutes, mail notice of the forfeiture to the surety on the bond or depositor of money instead of bond, and shall execute a certificate of such mailing and place it in the court's file in the case. . . . If the clerk fails to mail such notice within 30 days after such entry, the surety or depositor shall be released from all obligations under the bond.

"But if at any time within 180 days after . . . mailing such notice of forfeiture, the defendant and his bail appear, and satisfactorily excuse the defendant's neglect or show to the satisfaction of the court that the absence of the defendant was not with the connivance of the bail, the court shall direct the forfeiture . . . to be discharged upon such terms as may be just. . . . If at any time within 180 days after such [mailing] the bail should surrender the defendant to the court or to custody, the court shall direct the forfeiture of the . . . deposit to be discharged upon such terms as may be just.

"If within 180 days after such [mailing] it is made to appear to the satisfaction of the court that the defendant is dead or is otherwise permanently unable to appear in court due to illness, insanity, or detention by civil or military authorities, and that the absence of the defendant was not with the connivance of the bail, the court shall direct the forfeiture of . . . the deposit to be discharged upon such terms as may be just. . . .

"Unless waived by the district attorney or other prosecuting attorney, no order discharging the forfeiture of the . . . deposit shall be made without opportunity for hearing and the filing of a notice of motion for such order setting forth the basis for relief, with proof of service upon the district attorney or other prosecuting attorney at least 10 days prior to the time set for hearing of the motion and otherwise in compliance with the provisions of Section 1010

The 180 days would have expired in September 1984, but Minor sought extensions of time, which were granted on October 26 and 30, and November 16. Together they extended the time to January 10, 1985. The municipal court on that last date denied a fourth motion for further time in which to produce Arbaiza. Meanwhile, at the end of November 1984, the forfeited funds were deposited into the city's general fund. Arbaiza was apparently never found.

In February 1986, Minor filed a "Complaint for Return of Funds" against the municipal court and the city controller in superior court, seeking return of the $18,000 plus interest. Minor moved for summary judgment in December 1988, which the city opposed, and an order granting the motion after a hearing was filed on February 10, 1989.

We have no transcript of the hearing. In the order, the court held, "as a matter of law, that the bail forfeiture notice issued by the Municipal Court Clerk was not 'reasonably calculated' to inform [Minor] of the applicable time limitations under Penal Code, sections 1305, et seq." The city filed notice of appeal from that order on February 28, 1989.

## Appeal

 The city attacks the grant of summary judgment in two arguments, first, that the superior court lacked jurisdiction to entertain the suit, and second, that there was, in any event, a triable issue of fact whether Minor received adequate notice.[2]

---

of the Code of Civil Procedure. Such notice may by given by the surety insurer, its bail agent, the surety, or depositor of money, any of whom may give such notice and appear either in person or by attorney. Such notice of motion must be filed within 180 days after such [mailing] and must be heard and determined within 30 days after the expiration of such 180 days, unless the court for good cause shown, shall extend the time for hearing and determination.

"(b) If, without sufficient excuse, the defendant neglects to appear . . . but the court has reason to believe that sufficient excuse may exist for his neglect to appear . . . , the court may continue the case for such period as it deems reasonable to enable the defendant to appear without ordering a forfeiture of bail or issuing a bench warrant." (Stats. 1982, ch. 834, § 2, pp. 3156-3157.)

[2] We reject two counterarguments raised by Minor.

He first asks that we dismiss the appeal because no appealable judgment existed when the city filed its notice of appeal. We decline to dismiss. The court's February 10 order granting summary judgment was a nonappealable, preliminary order (see 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 76, p. 100), but the record shows that the court filed an appealable judgment on May 3, 1989. We follow the now common practice of deeming the premature notice filed February 28 as referring to that judgment. (Cal. Rules of Court, rule 1(a); *Crookham* v. *Smith* (1977) 68 Cal.App.3d 773, 775, fn. 1 [137 Cal.Rptr. 428].)

Minor secondly suggests that the summary judgment can be affirmed based on the fact that the city, which filed opposition to the summary judgment motion, failed to file a separate

## I

The jurisdictional argument has two parts, one being that the superior court lacked fundamental jurisdiction to proceed because the $18,000 which Minor sought by this suit was below the monetary floor of that court and, thus, could only be brought, if at all (the second jurisdictional argument), in the municipal court. The argument is inexcusably raised for the first time in the city's reply brief. ■ Yet, because the defect goes to the lower court's "jurisdiction" in the strictest, most fundamental sense (*Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280, 288 [109 P.2d 942, 132 A.L.R. 715]), it may be raised for the first time on appeal and, in fact, would have to be raised on our own if not raised by the parties (*Bachis* v. *State Farm Mutual Auto. Ins. Co.* (1968) 265 Cal.App.2d 722, 724 [71 Cal.Rptr. 486]; *Linnick* v. *Sedelmeier* (1968) 262 Cal.App.2d 12 [68 Cal.Rptr. 334]).

■ The amount in controversy generally required for filing actions in superior court was raised effective January 1, 1986, from $15,000 to $25,000. (Code Civ. Proc., § 86; Stats. 1985, ch. 1383, § 1, pp. 4903-4905; *Roybal* v. *University Ford* (1989) 207 Cal.App.3d 1080, 1088 [255 Cal.Rptr. 469]; Cal. Const., art. VI, § 10.) Minor filed suit in February 1986. ■ The complaint, whose prayer determines the amount in controversy (*Campbell* v. *Superior Court* (1989) 213 Cal.App.3d 147, 151 [261 Cal.Rptr. 509]), sought recovery of the $18,000 cash bail plus interest and costs. Interest and costs had to be excluded from the calculation in this case, as is generally true. (2 Witkin, Cal. Procedure (3d ed. 1985) Jurisdiction, § 21, pp. 387-388; Code Civ. Proc., § 86, subd. (a)(1).) ■ Had there been doubt, Minor confirmed in response to a request for statement of damages (Code Civ. Proc., § 425.11) that he sought only a return of the $18,000 bail plus legal interest. Thus, the amount in controversy was obviously under $25,000.

Nevertheless, the superior court's jurisdiction can be saved by construing the complaint as one for declaratory relief, and we assume in support of the judgment that the court placed that construction on it. Declaratory relief is available where an actual controversy exists as to property, among other things (Code Civ. Proc., § 1060), and is commonly used to resolve constitutional issues arising from the application of statutes (5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 809, p. 252). The superior court has exclusive

---

statement responding to his own statement of undisputed facts, as required by statute. (Code Civ. Proc., § 437c, subd. (b).) That sanction, however, is discretionary with the court. It thus must appear from the record to have been relied upon before an appellate court will affirm a grant of summary judgment on that basis. (*Gilbertson* v. *Osman* (1986) 185 Cal.App.3d 308, 315 [229 Cal.Rptr. 627].) Our record does not show any reliance on the procedural defect.

jurisdiction over such actions unless raised by cross-complaint in municipal court (*id.*, § 800, p. 244; Code Civ. Proc., § 86, subd. (a)(7)), regardless of the amount in controversy (2 Witkin, Cal. Procedure, *supra,* Jurisdiction, § 43, p. 410).

■ The fact that Minor's complaint was not labeled one for declaratory relief is not important. "[S]ince there are no forms of action, a declaration of rights will be upheld if the complaint states sufficient facts even though the pleader did not think he was proceeding under [Code of Civil Procedure section] 1060 and did not appropriately label his complaint." (5 Witkin, Cal. Procedure, *supra*, § 804, p. 247.) ■ A complaint is legally sufficient " 'if it sets forth facts showing the existence of an actual controversy relating to the legal rights and duties of the parties under a written instrument or with respect to property and requests that the rights and duties of the parties be adjudged by the court. . . .' " (*Cardellini* v. *Casey* (1986) 181 Cal.App.3d 389, 395 [226 Cal.Rptr. 659], quoting *Wellenkamp* v. *Bank of America* (1978) 21 Cal.3d 943, 947 [148 Cal.Rptr. 379, 582 P.2d 970].)

■ The pleading, labeled "Complaint for Return of Funds," set forth facts showing the timing of posting bail, the notice and forfeiture, and asserted a right to return or "exoneration" of the cash bail then in the city's possession. We uphold the superior court's construction of the pleading as sufficient to support declaratory relief. That construction is implied in the court's written order granting summary judgment, which declared, "as a matter of law, that the bail forfeiture notice issued by the Municipal Court Clerk was not 'reasonably calculated' to inform [Minor] of the applicable time limitations under Penal Code, sections 1305, et seq. . . ."

The city's second jurisdictional argument is that Minor's proper remedy was not to file suit in superior court, but to move the municipal court to set aside the forfeiture and, should the motion be denied, appeal the order to the appellate department of the superior court. Moving to set aside in the court which entered forfeiture is, of course, prescribed by the statute (§ 1305; fn. 1, *ante*), and the motion-appeal procedure urged by the city was followed in *People* v. *Houle* (1957) 153 Cal.App.2d Supp. 894 [316 P.2d 100] (disapproved on other grounds in *People* v. *Rolley* (1963) 223 Cal.App.2d 639, 642 [35 Cal.Rptr. 803]). We observe that the appellate division could then certify questions to this court if desired. (*People* v. *American Bankers Ins. Co.* (1987) 191 Cal.App.3d 742, 744-745 [236 Cal.Rptr. 501].) On the other hand, Minor notes that relief was directly sought in superior court in *People* v. *Swink* (1984) 150 Cal.App.3d 1076 [198 Cal.Rptr. 290] (*Swink*). However, *Swink* may be distinguishable in that

the depositor moved the superior court *to set aside* the forfeiture declared by the municipal court, and it appears from the opinion that the criminal case was transferred to superior court between the time when forfeiture was ordered and relief was sought. (*Swink, supra,* at pp. 1078-1079.) As to monetary limits, we note that once a superior court obtains jurisdiction over bail, it has continuing jurisdiction so that a low *amount* of bail in controversy (e.g., $5,000 in *Swink*) does not defeat the court's jurisdiction (*People* v. *Argonaut Ins. Co.* (1977) 71 Cal.App.3d 994, 996-997 [139 Cal.Rptr. 795]).

Whatever the merits of this idea that relief should have been sought in the municipal court, it does not alter our holding that the superior court properly treated the action as one for declaratory relief. Declaratory relief is by statute made *cumulative* to other remedies. (Code Civ. Proc., § 1062.) "In view of this statute, it is difficult to see how a good complaint for declaratory relief can be deemed insufficient because some other remedy is available." (5 Witkin, Cal. Procedure, *supra*, Pleading, § 816, p. 258.) We hold that the availability of relief in the municipal court did not preclude this action.

## II

On the merits of the superior court's ruling, we agree that the notice of forfeiture, as worded, was constitutionally deficient.

The controlling case is *Swink*, where a cash bail depositor received notice stating that " 'bail will remain forfeited until the defendant appears.' " (*Swink, supra*, 150 Cal.App.3d 1076, 1078.) ▪ ▪▪▪ Reviewing the general requirements for procedural due process (U.S. Const., 5th & 14th Amends.; Cal. Const., art. I, §§ 7 & 15) and tailoring them to bail forfeiture proceedings under section 1305,[3] the Court of Appeal decided: "The notice here is constitutionally deficient because it fails to tell Swink of the statutory procedure to set aside the declaration of forfeiture, including the time

---

[3] "Although the fundamental requisite of due process of law is the opportunity to be heard, this right is meaningless unless one knows the matter is pending and can choose for himself whether to appear or default, acquiesce or contest. (*Mullane* v. *Central Hanover Tr. Co.* (1950) 339 U.S. 306, 314 . . . .) 'The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." ' (*Mathews* v. *Eldridge* (1976) 424 U.S. 319, 333 . . . , quoting *Armstrong* v. *Manzo* (1965) 380 U.S. 545, 552 . . . ), and '[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. [Citations.] The notice must be of such a nature as reasonably to convey the required information. . . . [¶] The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it.' (*Mullane* v. *Central Hanover Tr. Co., supra,* 339 U.S. at p. 314-315 . . . .)" (*Swink, supra,* 150 Cal.App.3d 1076, 1080.)

period within which to do so. . . . It merely refers to the declaration of forfeiture without telling her of the pending action (i.e., the perfection of the forfeiture . . . ), the underlying statutory scheme governing forfeitures, or that there were jurisdictional time limits. Moreover, it implies the absence of time limitations and the automatic discharge of the forfeiture upon defendant's appearance." (150 Cal.App.3d at p. 1081, citations and fns. omitted.) "Sureties and depositors within the context of this case are entitled to notice of both the underlying statutory scheme governing the forfeiture process and the controlling time limitations. [Citations.] The conveyance of this information places no great burden on court clerks. [¶] Finally, within this context, we agree with the court in *Wilson* v. *Health & Hospital Corp. of Marion Cty.* [(7th Cir. 1980)] 620 F.2d 1201, 1215, it is unrealistic to require each individual to be conversant with the procedural provisions of municipal ordinances or statutory law. 'When the individual fails to exercise the fundamental procedural right to a hearing granted to him under the ordinance and required by due process because he was not informed of that right by the government authorities, we do not believe it is adequate for the government simply to rely upon the time worn adage "ignorance of the law is no excuse." Thus, we find that appellee's notice procedure of relying upon the public character of the ordinance was not "reasonably calculated" to inform appellant of the availability of a hearing and that the personal notice is required and will not impose an unreasonable burden upon the appellees.' (*Ibid.*)" (*Id.*, at pp. 1082-1083.)

 Our case is distinguishable in that the notice did not *affirmatively* imply an absence of time limits or that forfeiture would automatically be discharged should the defendant appear. However, the holding in *Swink* goes further, requiring "notice of both the underlying statutory scheme governing the forfeiture process and the controlling time limitations." (150 Cal.App.3d at p. 1082.) The notice here said, "Pursuant to Section 1305 of the Penal Code, you are hereby notified of an order of the Court this date forfeiting bail . . . ." Like the notice in *Swink*, it failed to tell of "the pending action (i.e., the perfection of the forfeiture . . . ), the underlying statutory scheme governing forfeitures, or that there were jurisdictional time limits." (*Id.*, at p. 1081.) Reference to section 1305 alone, without any hint that relief from forfeiture was available, let alone the time limits for seeking it, was deficient under any reasonable reading of *Swink*. Mere reference to the code section may suffice for professional sureties who routinely work with the section and are presumably familiar with it. (Cf. *Matter of Emmanuel Nursing Home* (Minn.App. 1987) 411 N.W.2d 511, 516-517 [reference to an administrative rule sufficient for a nursing home].) Here, however, the intended recipient was a private cash depositor residing in Florida. We know of no precedent suggesting that reciting a code section in

these circumstances is enough. We agree with the superior court that, as a matter of law, the notice was not reasonably calculated to inform Minor of those rights discussed in *Swink*.[4]

Attempting to identify a triable issue of *fact* which would preclude summary judgment (Code Civ. Proc., § 437c, subd. (c)), the city contends that, in light of evidence that Minor learned enough to seek and receive three extensions of time from the municipal court and yet did not produce Arbaiza within that time, there is a triable issue whether he had *actual* notice or, put another way, whether defects in the mailed notice *caused* his failure to have the forfeiture set aside. The city thus urges that summary judgment would be proper only if Minor produced evidence that, with valid notice, he could have had the forfeiture set aside under section 1305.

■ We find the arguments misguided. To start, the issue of whether notice is reasonably calculated to inform interested parties is factual only in that a court considers overall characteristics of the *class* of those to be notified. Varying sophistication levels of particular persons within that class do not pose questions of fact for resolution in each case. (*Matter of Emmanuel Nursing Home, supra,* 411 N.W.2d 511, 517.)

■ Next, the idea that *actual* notice in a given case defeats a procedural due process claim, or renders it "harmless error," runs counter to established case law. Where reasonable notice is needed to confer personal jurisdiction, for example, it is uniformly held that actual notice is irrelevant. (See, e.g., *Dr. Ing H.C. F. Porsche A.G.* v. *Superior Court* (1981) 123 Cal.App.3d 755, 762 [177 Cal.Rptr. 155]; *Waller* v. *Weston* (1899) 125 Cal. 201, 203 [57 P. 892]; see also 2 Witkin, Cal. Procedure, *supra,* Jurisdiction, § 84, p. 454.) ■ The city cites two bail-forfeiture cases for the idea that lack of harm caused by a due process violation defeats the claim, but neither case holds so broadly. Also, each involved professional sureties, which,

---

[4] The city cites *Swink* itself as authority that reciting the code section is enough for a lay person, but we do not read the opinion that way. *Swink* noted the plaintiff's contention that, while section 1305 required notice to the surety or depositor of the declaration of forfeiture and further provided for a hearing process, "such a notice is meaningless to a lay surety unless it informs that person of the right to participate in the hearing process." (*Swink, supra,* 150 Cal.App.3d 1076, 1079.) The city relies on the footnote which immediately follows: "By contrast, the Legislature has insured that lay persons who post property bonds are specifically notified their forfeitures will be governed by the provisions of section 1305, by incorporating reference to that section in the bond itself. (§ 1278.)" (*Id.*, fn. 5.)

That footnote hardly connotes approval of merely reciting the code section for *forfeiture notice*. Section 1278 prescribes language for use *upon posting*. *Swink* requires that forfeiture notices advise that a statutory scheme for relief is available and that time limits exist for utilizing it. (*Id.*, at p. 1082.) Reciting the bare code section, without comment, does neither.

apart from the challenged notice, had unchallenged notice of the defendant's nonappearance.[5]

In a letter submitted after oral argument, the city cites *Carey* v. *Piphus* (1978) 435 U.S. 247 [55 L.Ed.2d 252, 98 S.Ct. 1042], a civil rights case (42 U.S.C. § 1983) where it was held that plaintiff students who had been suspended from school without due process could recover only nominal damages should it be shown that they could not have avoided suspension even *with* due process protections. The case does not help. It is one thing to say that *damages* for a due process violation are limited to losses caused by the violation; it is a different matter to say that there is *no violation* if no harm resulted. A violation plainly occurred here. Moreover, Minor did not seek damages. He only sought return of the forfeited bail.

Finally, this emphasis on causation in the due process violation diverts us from the statute, which makes causation in this case irrelevant. Sections 1305 and 1306, being forfeiture statutes, are strictly construed; acts undertaken outside their prescribed time limits are deemed invalid as acts in excess of jurisdiction. (*County of Los Angeles* v. *Surety Ins. Co.* (1984) 162 Cal.App.3d 58, 62-63 [208 Cal.Rptr. 263]; *People* v. *United Bonding Ins. Co.* (1971) 5 Cal.3d 898, 904-907 [98 Cal.Rptr. 57, 489 P.2d 1385].) Even a notice which comports with due process is void if it violates statutory jurisdictional notice requirements (see 2 Witkin, Cal. Procedure, *supra,* Jurisdiction, § 203, p. 595) such as those in sections 1305 and 1306. Section 1305 leaves no doubt of this when it prescribes mailing notice of an entered forfeiture: ". . . If the clerk fails to mail such notice within 30 days after such entry, the surety or depositor *shall be released from all obligations* under the bond." (§ 1305, subd. (a), italics added; see fn. 1, *ante.*)

The notice given Minor was timely but meaningless. It failed to serve the statutory purpose of alerting him that (1) potential relief was available and (2) relief had to be sought within just 180 days unless an extension were obtained. In the statutory scheme, the property deprivation occurs automatically at the end of that time. (*People* v. *Beverly Bail Bonds* (1982) 134

---

[5]Sureties in *People* v. *Surety Ins. Co.* (1977) 76 Cal.App.3d 57 [143 Cal.Rptr. 47] (*Surety*) guaranteed appearances in an appeal-bond case but not in a concurrent probation case. When confusion resulted in a notice of forfeiture for a nonguaranteed appearance, the reviewing court noted that the sureties otherwise had court notice and every reason to secure the defendant's appearance for 13 months, yet failed to do anything during the first 7.

In *County of Los Angeles* v. *American Bankers Ins. Co.* (1988) 202 Cal.App.3d 1291 [249 Cal.Rptr. 540], the court found no violation of due process and, in dictum, noted the lack of apparent grounds for setting aside, erroneously citing *Surety* for the proposition that such a showing was necessary.

Cal.App.3d 906, 909-910 [185 Cal.Rptr. 36]; *People* v. *Surety Insurance Co.* (1978) 82 Cal.App.3d 229, 236-239 [147 Cal.Rptr. 65]; § 1307.) The notice failed to advise that there was a way to avoid that result. The notice being ineffectual, Minor was "released from all obligations" (§ 1305, subd. (a)) and thus entitled to return of the cash bail. No triable issues of fact existed.

## DISPOSITION

The judgment is affirmed.

Kline, P. J., and Peterson, J., concurred.