Filed 10/28/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ACCREDITED SURETY AND<br>CASUALTY COMPANY, INC.<br><br>    Defendant and Appellant. | A136872<br><br>(San Mateo County<br> Super. Ct. No. CIV513412) |

Appellant Accredited Surety and Casualty Company, Inc. (Surety) appeals from the denial of its motion to set aside summary judgment, discharge forfeiture and exonerate bail. Surety posted a bail bond for the release from custody of one Ji Liang Cheng who failed to appear for sentencing, causing bail to be forfeited. When Cheng was not produced within the extended statutory time period within which Surety could move for relief from the forfeiture, the court entered summary judgment against Surety. Surety then moved to set aside the summary judgment, discharge the forfeiture and exonerate the bail, which the court denied. Surety's appeal from that order challenges the sufficiency of the notice of forfeiture served upon it, and the timeliness of the summary judgment. We conclude that the notice to Surety, a professional surety, although easily capable of improvement, satisfied due process requirements, and that although the summary judgment was entered beyond the statutory deadline, Surety is estopped to complain because it acquiesced in the scheduling error leading to the late entry of the summary judgment.

**Background**

On January 13, 2010, through a bail bond agent Surety posted a $100,000 bail bond for the release of Cheng, who was facing drug and drug-related charges. Following his conviction upon a plea of nolo contendere, Cheng failed to appear for sentencing on January 11, 2011, as had been ordered, and his bail was declared forfeited. On January 18, the court clerk mailed to Surety and to its agent a "Notice of Order Forfeiting Bail" which read in full: "You are hereby notified that Bail Bond No. A100-00449105, in the sum of $100,000 was forfeited on 1/11/11. Defendant having failed to appear for Probation Report & Sentencing."

On July 22, 2011, the 185th day after the notice of forfeiture was mailed, Surety filed a motion pursuant to Penal Code[1] section 1305.4 to extend the time period within which it could move for relief from the forfeiture pursuant to section 1305. The People filed a non-opposition to this motion which stated in part: "The People believe that the moving party in this case has complied with Penal Code § 1305.4 by showing good cause for granting the extension. It is respectfully suggested that the statutory deadline should be extended in this matter for 180 days from the date of the hearing on this motion, i.e., until January 31, 2012." On August 5 the court entered an order purporting to extend the deadline to January 31, 2012.

On April 26, 2012, Cheng not having appeared and no motion for relief from the forfeiture having been sought or granted, summary judgment was entered on the forfeiture and notice of its entry was mailed to Surety the following day. On June 22, 2012, Surety filed a motion to set aside the summary judgment, discharge the forfeiture and exonerate bail on the ground that the summary judgment was filed beyond the period authorized by section 1306, subdivision (c) and therefore was void. The trial court denied this motion and Surety thereafter timely filed its notice of appeal.

---

[1] All statutory references are to the Penal Code unless otherwise noted.

2

**Discussion**

I. *The Notice of Forfeiture Was Not Constitutionally Inadequate*

Although Surety did not make this contention in the trial court, it argues on appeal that the court lost jurisdiction to enter the summary judgment because the notice of forfeiture was inadequate to satisfy due process standards.[2]

Section 1305, subdivision (b) provides in part: "If the amount of the bond . . . exceeds four hundred dollars ($400), the clerk of the court shall, within 30 days of the forfeiture, mail notice of the forfeiture to the surety . . . ." Proper notice in compliance with this provision is a necessary predicate to collection on the bond. The subdivision goes on to provide that the surety shall be released of all obligations under the bond if "[t]he clerk fails to mail the notice of forfeiture in accordance with this section within 30 days after the entry of the forfeiture" or mails the notice to the wrong address. (§ 1305, subd. (b)(1)-(3).)

Surety does not dispute that the notice mailed to it on January 18, 2011 complied with the literal terms of the statute. However, it contends that the notice was ineffective because it failed to recite the statutory provisions under which it was issued and under which relief from forfeiture may be obtained, including the time limitation for seeking such relief. Based on principles established by the United States Supreme Court (e.g., *Memphis Light, Gas & Water Division v. Craft* (1978) 436 U.S. 1 (*Craft*)), and two California Court of Appeal bail bond forfeiture decisions (*People v. Swink* (1984) 150 Cal.App.3d 1076 (*Swink*); *Minor v. Municipal Court* (1990) 219 Cal.App.3d 1541 (*Minor*)), Surety argues that due process requires that such notice be provided before forfeiture can be imposed, and that the failure to include that information in the notice renders the notice it received void and ineffectual.

---

[2] Respondent does not challenge Surety's ability to raise the issue for the first time on appeal, undoubtedly because the issue is purely one of law and goes to the court's jurisdiction. (See 9 Witkin, California Procedure, Appeal § 406, pp.464-465 (5th ed. 2008).)

The authority on which Surety relies unquestionably does, as a general matter, stand for these broad propositions. *Swink* and *Minor* clearly and unequivocally hold that a notice of bail forfeiture sent to lay individuals that does not contain this information is insufficient to maintain the forfeiture. The question in this case is whether the same analysis applies when bond is posted by a corporate surety that presumably knows, or at least should know, of the statutory provisions that govern the issuance of bail bonds, forfeiture of bail, and relief from forfeiture.

In *Craft,* the Supreme Court held that a municipal utility's failure to include in a notice that a customer's failure to make an overdue payment would result in termination of service, advice "of the availability of a procedure for protesting a proposed termination of utility service as unjustified" did not "comport with constitutional requirements" of due process. (436 U.S. at pp.14-15.) The court reached this conclusion after considering "three distinct factors" specified in *Mathews v. Eldridge* (1976) 424 U.S. 319, 334-335: " 'First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and fiscal and administrative burdens that the additional or substitute procedural requirement would entail.' " (*Id.* at pp. 17-18.) Utilizing this balancing approach, the court concluded that "[b]ecause of the failure to provide notice reasonably calculated to apprise [the customer] of the availability of an administrative procedure to consider their complaint of erroneous billing, and the failure to afford them an opportunity to present their complaint to a designated employee empowered to review disputed bills and rectify error, [the utility] deprived [the customer] of an interest in property without due process of law." (*Id.* at p. 21.)

In *Swink, supra,* an individual deposited cash in lieu of a bail bond to guarantee the appearance of a defendant who failed to appear, the cash bail was forfeited and a notice was sent to Swink, the individual who had deposited the cash, stating, "bail will remain forfeited until the defendant appears." (150 Cal.App.3d at p. 1078.) Relying on a

4

long line of Supreme Court decisions, including *Mullane v. Central Hanover Tr. Co.* (1950) 339 U.S. 306, *Mathews v. Eldridge, supra,* 424 U.S. 319, and *Craft, supra,* 436 U.S. 1, the court held that the notice was "constitutionally deficient because it fail[ed] to tell Swink of the statutory procedure to set aside the declaration of forfeiture, including the time period within which to do so." The court pointed out that the notice failed to tell Swink "of the pending action (i.e., the perfection of the forfeiture . . .), the underlying statutory scheme governing forfeitures, or that there were jurisdictional time limits. Moreover, it implies the absence of time limitations and the automatic discharge of the forfeiture upon defendant's appearance." (*Id.* at p. 1081, fns. omitted.) Applying the balancing test prescribed in *Mathews v. Eldridge, supra,* 424 U.S. 319, the court reasoned: "Swink's interest in recouping their deposit is significant; the risk of erroneous deprivation of that interest through procedures used is substantial for those who are not professional sureties or bail bondsmen; the probable value of additional or substitute procedural safeguards is substantial considering the consequences of failing to discharge the forfeiture; and the government's interest in not providing a more complete and informative notice is minimal, as the cost of modifying the letter notice is de minimis." (*Id.* at p. 1082.) The court therefore reversed an order denying Swink's motion for discharge of the forfeiture.

In *Minor, supra,* the situation was similar. The notice to the individual who had posted bail, Minor, stated, "Pursuant to Section 1305 of the Penal Code, you are hereby notified of an order of the Court this date forfeiting bail . . . " (219 Cal.App.3d at p. 1550.) The court recognized that the notice was distinguishable from the notice in *Swink* because it "did not *affirmatively* imply an absence of time limits or that forfeiture would automatically be discharged should the defendant appear, " but held that the notice nonetheless was constitutionally deficient. "Like the notice in *Swink,* it failed to tell of 'the pending action (i.e., the perfection of the forfeiture . . . ), the underlying statutory scheme governing forfeitures, or that there were jurisdictional time limits.'. . . Reference to section 1305 alone, without any hint that relief from forfeiture was available, let alone

5

the time limits for seeking it, was deficient under any reasonable reading of *Swink.*" (*Ibid.*)

These cases, on which Surety relies, all involved the sufficiency of notice to lay persons, who presumably were unaware of the statutory procedures for obtaining relief. These same cases recognize that the ultimate question in determining whether a given notice satisfies due process is whether, under the particular circumstances, the notice is reasonably calculated to inform the recipient of the process by which the recipient may challenge the governmental action in question. (See, e.g., *Mullane v. Central Hanover Bank & Trust, supra,* 339 U.S. at pp. 314-315 ["notice must be of such nature as reasonably to convey the required information . . . [¶] . . . [¶] The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected"].) As the Supreme Court stated in *Mathews v. Eldridge,* our high court "decisions underscore the truism that ' (d)ue process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." (Citation.) 'Due process is flexible and calls for such procedural protections as the particular situation demands.' " (424 U.S. at p. 334.) This principle was reiterated in *Craft,* where the court observed that the notice that it held there to be constitutionally deficient "may well have been adequate under different circumstances." (436 U.S. at p. 15, fn. 15.) There, the court emphasized, the notice was given "to thousands of customers of various levels of education, experience, and resources. Lay consumers of electric service, the uninterrupted continuity of which is essential to health and safety, should be informed clearly of the availability of an opportunity to present their complaint" before service is terminated. (*Ibid.*)

Similarly, in *Swink,* although the court spoke of the necessity of giving notice to "sureties and depositors," it did so "within the context of [that] case" (150 Cal.App.3d at p. 1082), which concerned a notice sent to a lay person. In weighing the considerations specified in *Mathews v. Eldridge,* the court considered that the risk of erroneous deprivation of the bail depositor's interest in recouping the deposit "is substantial *for those who are not professional sureties or bondsmen." (Ibid*, italics added.*)* In *Minor,*

6

while holding that reference to section 1305 in the forfeiture notice was not sufficient to advise the lay recipient of the statutory scheme governing forfeitures, the court recognized that "[m]ere reference to the code section may suffice for professional sureties who routinely work with the section and are presumably familiar with it." (219 Cal.App.3d at p. 1550.) While holding that actual knowledge of the statutory procedures does not defeat a due process claim if the notice is insufficient to provide reasonable notice to the class of persons of which the recipient is a member, the court pointed out that "the issue of whether notice is reasonably calculated to inform interested parties is factual only in that a court considers overall characteristics of the *class* of those to be notified." (*Id.* at p. 1551.) The court distinguished two bail-forfeiture cases in which forfeiture was upheld despite imperfections in the statutory notice on the ground that "each involved professional sureties, which, apart from the challenged notice, had unchallenged notice of the defendant's nonappearance." (*Id.* at pp. 1551-1552.)[3]

As these cases imply, the class of those to whom due process requires that notice of a bail forfeiture contain explicit notification of the procedure by which to obtain relief from the forfeiture does not include professional sureties, such as the surety in the present case. Unlike the lay persons involved in *Swink* and *Minor,* Surety "routinely work[s] with the section [1305] and [is] presumably familiar with it." (219 Cal.App.3d at p. 1550.) Indeed, the bond which Surety issued in this case explicitly provides, "If the forfeiture of this bond be ordered by the court, judgment may be summarily made and entered forthwith against the said ACCREDITED SURETY AND CASUALTY COMPANY, INC., a Florida Corporation, for the amount of its undertaking herein *as provided by Sections 1305and 1306 of the Penal Code."* (Italics added.)

Hence, although we can discern no good reason for the court failing to include such information in all forfeiture notices, regardless of the particular recipient, we

---

[3] *County of Los Angeles v. American Bankers Ins. Co.* (1988) 202 Cal.App.3d 1291, 1295-1296; *People v. Surety Ins. Co.* (1977) 76 Cal.App.3d 57. See also, *People v. Ranger Ins. Co.* (1996) 51 Cal.App.4th 1379, 1385; *People v. American Bankers Ins. Co.* (1991) 227 Cal.App.3d 1289, 1294-1296.

conclude that failure to do so in the notice sent to Surety, a licensed insurer and professional surety, does not violate constitutional strictures, and that the notice therefore is not void as Surety contends.

II. *The motion to set aside the summary judgment was properly denied*

Surety next contends, as it did in the trial court, that the summary judgment is void because entered beyond the time period mandated by section 1306. The trial court denied the motion to set the judgment aside on two grounds, that the motion was itself untimely, and that the summary judgment was not untimely entered. Although we disagree with the trial court's reasoning in both respects, we believe it reached the correct conclusion.

a. Timeliness of the motion to set aside the summary judgment.

The summary judgment against Surety was signed on April 18, 2012, entered on April 26, 2012, and notice of its entry served by mail on Surety on April 27, 2012. Surety's motion to set aside summary judgment, discharge forfeiture and exonerate bail was served and filed on June 22, 2012. The People argued and the trial court agreed that the motion was untimely because filed beyond the 30 day period specified in section 1308. We fail to see, however, how section 1308 has any application. Section 1308, subdivision (a) provides that the court may not accept any person or corporation as surety on bail "if any summary judgment against that person or corporation entered pursuant to Section 1306 remains unpaid after the expiration of 30 days after service of the notice of the entry of the summary judgment," subject to the proviso that a motion attacking the validity of the forfeiture or summary judgment is not pending. This section does not purport to establish a time within which a motion challenging entry of the summary judgment must be filed; it merely curtails the right to act as a surety on bail in subsequent cases if the person or corporation has not within 30 days paid or filed a pending challenge to a summary judgment under section 1306 against it in a prior case.

Unless the summary judgment was void, in which case it could be attacked at any time (*People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 660), the motion to set it aside may have been untimely under other applicable provisions. The authority for Surety's motion to set aside the summary judgment would appear to be

8

either Code of Civil Procedure section 663, a motion to vacate the judgment,[4] or Code of Civil Procedure section 659, a motion for a new trial. In either case, the motion would have been required to be made within 15 days of the date on which the clerk mailed notice of the entry of the summary judgment. (Code Civ. Proc., §§ 659, subd. (a)(2), 663a, subd. (a)(2).) Surety argues that the provisions of the Code of Civil Procedure have no application to proceedings affecting the exoneration or forfeiture of bail which, it argues, are governed exclusively by the provisions of the Penal Code. We question this assertion because "[t]he forfeiture of bail is an independent, collateral matter, civil in nature." (*People v. Wilcox* (1960) 53 Cal.2d 651, 654.) Nonetheless, motions to set aside summary judgments entered pursuant to section 1306 have been permitted, without discussion of the timeliness of the motion, well beyond the 15-day periods specified in the Code of Civil Procedure. (E.g. *County of Sacramento v. Insurance Co. of the West* (1983) 139 Cal.App.3d 561, 563-564 [motion to vacate summary judgment filed more than two years after entry of summary judgment]; *People v. Ranger Ins. Co.* (1992) 9 Cal.App.4th 1302, 1304 [motion to vacate summary judgment filed 63 days after entry of summary judgment]. We question whether there is or should be no limit on the time within which such a motion must be filed, and legislation to provide an express limitation may well be appropriate and of considerable assistance to our trial courts. In all events, it is not necessary to reach any conclusions about the timeliness of Surety's motion in this case because we conclude that, even if timely, the motion was properly denied.

---

[4] Code of Civil Procedure section 663 provides that "A judgment or decree, when based upon a decision by the court, or the special verdict of a jury, may, upon motion of the party aggrieved, be set aside and vacated by the same court, and another and different judgment entered, for either of the following causes, materially affecting the substantial rights of the party and entitling the party to a different judgment: [¶] 1. Incorrect or erroneous legal basis for the decision, not consistent with or not supported by the facts . . . ." (Code Civ. Proc. § 663, subd. (1).)

b. <u>Although entered in excess of the court's jurisdiction, the summary judgment is voidable, not void, and Surety is estopped to set it aside.</u>

Section 1306 provides in part: "(a) When any bond is forfeited and the period of time specified in Section 1305 has elapsed without the forfeiture having been set aside, the court which has declared the forfeiture shall enter a summary judgment against each bondsman named in the bond in the amount for which the bondsman is bound. The judgment shall be the amount of the bond plus costs, and notwithstanding any other law, no penalty assessments shall be levied or added to the judgment. [¶] . . . [¶] (c) If, because of the failure of any court to promptly perform the duties enjoined upon it pursuant to this section, summary judgment is not entered within 90 days after the date upon which it may first be entered, the right to do so expires and the bail is exonerated."

Section 1305, subdivision (c)(1) provides that if the defendant for whom the bond was posted appears within 180 days of the date of mailing a notice of bond forfeiture, extended by five days for service by mail (§ 1305, subd. (b)), the so-called "appearance period," the forfeiture shall be vacated and the bond exonerated.[5] Section 1305.4 authorizes the court, upon motion and a showing of good cause, to "order the period extended to a time not exceeding 180 days from *its order*." (Italics added.) As observed in previous appellate decisions, there is an ambiguity in the words "its order." The People argue, and the trial court held, that these words refer to the order granting the extension. Here, the court entered an order on August 5, 2011 granting Surety's motion under section 1305.4, purporting to extend the deadline for seeking relief from forfeiture to January 31, 2012, within 180 days of August 5, 2011. Since the summary judgment was entered on April 26, 2012, within 90 days of January 31, the court held that it was properly entered "within 90 days after the date upon which it may first be entered" as required by section 1306, subdivision (c).

All of the cases that have addressed the ambiguity in section 1305.4 have concluded that this is not a correct reading of the statute. The issue was first considered in

_____

[5] Section 1305 contains numerous qualifications and tolling provisions that have no application to the present case.

10

*People v. Taylor Billingslea Bail Bonds* (1999) 74 Cal.App.4th 1193. The court recognized that "[t]he language of section 1305.4 is somewhat ambiguous. . . . Does 'its order' mean the original order extending the period so that the total of all extensions permitted under section 1305.4 cannot exceed 180 days, or does 'its order' mean the order issued in response to each request for extension which could result in limitless extensions of time as long as 'good cause' is shown and no single extension exceeds 180 days?" (74 Cal.App.4th at p. 1198.) After considering the legislative history of the measure, the court concluded: "Guided by the language of the statute and the explanation of its provisions provided by the legislative counsel, we are of the opinion that the Legislature intended section 1305.4 to allow an extension of no more than 180 days past the 180-day [now 185-day] period set forth in section 1305. The alternative interpretation proposed by appellant would permit the bail agent to obtain a new extension every 180 days, and drag the forfeiture period on indefinitely. This would violate the policy and spirit of the statutory framework within which section 1305.4 is found which strongly favors limiting the amount of time a surety has to challenge forfeiture." (*Id.* at p. 1199.) The same conclusion was expressed in *People v. Granite State Insurance Co.* (2003) 114 Cal.App.4th 758, 768 and in *People v. Bankers Ins. Co.* (2010) 182 Cal.App.4th 1377, 1380, 1382 ["the statute allows an extension of the appearance period 'of no more than 180 days' past the 185-day period provided by section 1305"].

The People contend that a footnote in a 2004 Supreme Court decision, holding that a summary judgment entered under section 1306 prematurely was voidable and not void (*People v. American Contractors Indemnity Co., supra,* 33 Cal.4th 653, 658 fn. 3), "casts a cloud" over these authorities.  The footnote does no more than note that the court had "no occasion to consider in this case whether the filing of a motion for extension of the appearance period (or a motion to vacate forfeiture) extends the commencement of the 90-day period for entering summary judgment," citing to *People v. Granite State Insurance Co., supra,* 114 Cal.App.4th 758. In *Granite State*, the court held that when a motion to vacate a forfeiture has been filed within the appearance period, the 90-day period within which the court must enter summary judgment does not begin to run until

the motion to vacate has been decided. The reasoning behind that decision hardly suggests, as the People urge, that when a motion to extend the appearance period filed within the initial 185-day period is decided after the expiration of the appearance period (as authorized by section 1305, subdivision (j)), the extension begins on the day the extension is ordered, rather than the date on which the initial 185-day appearance period expired. Despite the "cloud," the contrary interpretation was reaffirmed in 2010 in *People v. Bankers Ins. Co., supra,* 182 Cal.App.4th 1377.

Under the construction of section 1305.4 adopted by every court that has thus far considered the question, the summary judgment in the present case was entered after the expiration of the 90-day time period permitted by section 1306, subdivision (c). The notice of forfeiture was mailed to Surety on January 18, 2011. The 185th day thereafter was July 22, 2011. The maximum extension of the appearance period authorized by section 1305.4 was 180 days from July 22, 2011, to January 18, 2012. The order purporting to extend the appearance period to January 31, 2012 therefore was unauthorized by the statute. Measuring the 90-day period for entering summary judgment under section 1306 from January 18, 2012 – the latest date authorized by section 1305.4 – the 90 days expired on April 17, 2012. The summary judgment entered on April 26, 2012 therefore was in excess of the court's jurisdiction.

However, as the court observed in *People v. Bankers Ins. Co., supra,* "[t]hat . . . is not the end of the matter." (182 Cal.App.4th at p. 1382.) Surety asserts that because the summary judgment was entered in excess of the court's jurisdiction, the order is void. However, as the Supreme Court explained in *People v. American Contractors Indemnity Co., supra,* 33 Cal.4th at pp. 660-661, and the Court of Appeal repeated in *People v. Bankers Ins. Co., supra,* 182 Cal.App.4th at pp. 1382-1383, "When a court has fundamental jurisdiction, but acts in excess of its jurisdiction, its act or judgment is merely voidable. [Citations.] That is, its act or judgment is valid until it is set aside, and a party may be precluded from setting it aside by 'principles of estoppel, disfavor of collateral attack or res judicata.' " In *American Contractors Indemnity Co.,* the Supreme Court held that a summary judgment prematurely entered was merely voidable, not void,

12

and upheld an order denying a motion to set aside the summary judgment as untimely. In *Bankers Ins. Co.,* the court held that when the trial court entered a summary judgment beyond the properly computed 90-day period authorized by section 1306, subdivision (c), it "acted in excess of jurisdiction, and not outside the court's fundamental jurisdiction over the bail bond forfeiture" and therefore that the surety could be estopped from challenging the summary judgment. (182 Cal.App.4th at p. 1384.) In *Bankers Ins. Co.,* the surety had explicitly requested the extension of the appearance period to a date beyond the permissible 180 days and the Court of Appeal held that "the surety's affirmative conduct makes it appropriate to estop it from challenging the trial court's erroneous extension of the appearance period." (*Id.* at p. 1386.)[6] On that basis the court denied the surety's motion to vacate the summary judgment enforcing the surety's bond. (See also, *People v. National Automobile & Casualty Co.*(2000) 82 Cal.App.4th 120; *County of Los Angeles v. Ranger Ins. Co.* (1999) 70 Cal.App.4th 10.)

Surety acknowledges that "[t]he facts in [*Bankers Ins. Co.*] are similar to those here, except that the surety there invited the jurisdictional error by requesting an extension to a date beyond that permitted by the statute." Here, in contrast, Surety's motion under section 1305.4 requested an "order extending time on the bond," citing section 1305.4 and counsel submitted a proposed order that left blank the date to which the appearance period would be extended. The People submitted a written response to

---

[6] The full paragraph in which this statement appears is as follows: "We do not intend by this opinion to create a broad estoppel rule applicable to any misstep made by the surety. We recognize that the statutory provisions are replete with technicalities, and the trial courts must be vigilant in following the statutory strictures. In the circumstances here, however, the surety's affirmative conduct makes it appropriate to estop it from challenging the trial court's erroneous extension of the appearance period. To rule otherwise on this record would create a wholly unacceptable precedent, encouraging sureties to request multiple extensions from busy judges and, when their requests are honored and they nevertheless cannot produce the defendant, claim that they were wrong to have asked for further time and the judge should not have listened to their entreaties. To permit the surety to have it both ways—to obtain more time to avoid forfeiture of the bond, and then to have the bond exonerated because the judge gave them more time— would be to allow an intolerable manipulation of the trial courts. This we cannot and will not condone." (182 Cal.App.4th at p. 1386.)

Surety's motion, stating they were not opposed to the extension and suggesting that "the statutory deadline should be extended in this matter for 180 days from the date of the hearing on this motion, i.e., until January 31, 2012." The court order entered on August 5, 2011 adopted the People's suggestion and purported to extend the deadline to January 31, 2012, 13-days beyond the date authorized by section 1305.4. At no time did Surety bring to the court's attention the fact that the deadline should have been stated to be January 18.

Thus, assuming the Surety's motion to set aside the summary judgment to be timely, the critical question is whether Surety's acquiescence in the court's indication that the appearance period would remain open until January 31 estops it from now claiming that the period expired earlier and the court therefore entered summary judgment too late. Although the situation here may not be as compelling as in *Bankers Ins. Co.,* equitable principles nonetheless justify application of the estoppel doctrine. "There is substantial authority for the proposition that a party who has invoked *or consented* to the exercise of jurisdiction beyond the court's authority may be precluded from challenging it afterward, even on a direct attack by appeal." (2 Witkin, California Procedure, Jurisdiction § 333 at p. 949 (5th ed. 2008) (italics added); *In re Griffin* (1967) 67 Cal.2d 343, 347.) Failure to object may be sufficient to indicate consent. (*Bel Mar Estates v. California Coastal Com.* (1981) 115 Cal.App.3d 936, 940 ["A party cannot sit idly by and permit action to be taken and later say that it had not consented"]; *Mt. Holyoke Homes, LP v. California Coastal Com.* (2008) 167 Cal.App.4th 830, 842; *West Coast Constr. Co. v. Oceano Sanitary Dist.* (1971) 17 Cal.App.3d 693, 699.) Whether knowingly or not, Surety received the advantage of having the appearance period held open beyond what should have been the deadline. Had the defendant been produced between January 18 and January 31, the People would have been hard pressed to oppose relief from forfeiture on the bond. (See *County of Los Angeles v. Ranger Ins. Co., supra,* 70 Cal.App.4th at p. 19.) Both the People and the court appear to have relied on the January 31 date specified without objection in the court's order. The summary judgment was entered within 90 days of that date. The defendant for whom Surety posted bond having failed to appear, there is no reason for which Surety should not be estopped from challenging the

14

timeliness of the summary judgment entered within the time period to which Surety tacitly acquiesced.

Thus, because Surety is estopped to challenge the timeliness of the summary judgment, the motion to set it aside was properly denied.

## Disposition

The order denying the motion to set aside the summary judgment, discharge the forfeiture and exonerate bail is affirmed.

_____
Pollak, J.

We concur:

_____
McGuiness, P. J.

_____
Jenkins, J.

A136872

15

Trial Court:                                  Superior Court, County of San Mateo


Trial Judge:                                  Hon. Joseph E. Bergeron, Judge


Counsel for Appellant:                        E. Alan Nunez
Accredited Surety and Casualty
Company, Inc.


Counsel for Respondent:                       John C. Beiers, County Counsel
County of San Mateo                           Peter K. Finck, Deputy County Counsel